# EXHIBIT J
# N.T. APRIL 17, 2017

APRIL 15, 2017  9:19

# First Judicial District of Pennsylvania

*150604314*
*David Hatchigian V. Carrier Corporation*

*Motion Volume 1*
*April 18, 2017*



*First Judicial District of Pennsylvania*
*100 South Broad Street, Second Floor*
*Philadelphia, PA 19110*
*(215) 683-8000  FAX:(215) 683-8005*

Original File hatchigian.txt.txt, 21 Pages
CRS Catalog ID: 17070399

## Page 1

[1] IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY
FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
[2] CIVIL TRIAL DIVISION
[3] ---
[4] DAVID HATCHIGIAN,    : JUNE TERM, 2015
    Plaintiff,          :
[5]                     :
    vs.                 :
[6]                     :
    CARRIER CORPORATION :
[7] PEIRCE-PHELPS, INC.,:
    Defendants.         : NO. 4314
[8]
[9]                     ---
[10]        Room 682, City Hall
[11]        Philadelphia, Pennsylvania
[12]                    ---
[13]        Tuesday, April 18, 2017
[14]                    ---
[15] B E F O R E :
[16]    THE HONORABLE GENE D. COHEN, J.
[17]                    ---
[18]            Motion to Compel
[19]                    ---
[20]
[21]
[22]
[23]
[24]
[25]

## Page 2

[1] APPEARANCES:
[2]
    DAVID HATCHIGIAN
[3] 2414 Township Line Road
    Havertown, PA 19083-5236
[4] 610-446-7257
    Pro se Plaintiff
[5]
[6] MARSHALL DENNEHEY WARNER COLEMAN & GOGGIN
    BY: KIMBERLEY J. WOODIE, ESQUIRE
[7] 620 Freedom Business Center
    Suite 400
[8] King of Prussia, PA 19406
    Attorney for Defendant, Carrier Corporation
[9]
[10] JAMES F. RYAN, ESQUIRE
     995 Old Eagle School Road, #306
[11] Wayne, PA 19087
     Attorney for Defendant, Peirce-Phelps, Inc.
[12]
[13]
[14]
[15]
[16]
[17]
[18]
[19]
[20]
[21]
[22]
[23]
[24]
[25]

## Page 3

[1]                INDEX
[2]                ---
[3]        PLAINTIFF'S EVIDENCE
[4]                ---
[5] **WITNESS:**     DR   CR   RDR   RCR
[6]
[7]                ---
[8]        DEFENDANT'S EVIDENCE
[9]                ---
[10] **WITNESS:**    DR   CR   RDR   RCR
[11]
[12]                ---
[13]            EXHIBITS
[14]                ---
[15] NO.   DESCRIPTION          MARKED  ADMIT.
[16]
[17]
[18]
[19]
[20]
[21]
[22]
[23]
[24]
[25]

## Page 4

[1]                ---
[2]        (Proceedings commenced.)
[3]                ---
[4]     THE COURT: Now, I have a motion here to
[5] compel for a settlement issue. Come to the
[6] bar of the court, please.
[7]     MR. HATCHIGIAN: Good morning.
[8]     THE COURT: This is your motion to
[9] compel?
[10]    MR. RYAN: No, Your Honor, it's the
[11] plaintiff's motion.
[12]    THE COURT: The issue really is --
[13] Swear Mr. Hatchigian in.
[14]    THE COURT OFFICER: Raise your right
[15] hand. State your full name and spell, both,
[16] your first and last names.
[17]    MR. HATCHIGIAN: David Hatchigian.
[18]    THE COURT OFFICER: Spell your last name.
[19]    MR. HATCHIGIAN: H-A-T-C-H-I-G-I-A-N,
[20] spells Hatchigian.
[21]    ...DAVID HATCHIGIAN, after having been
[22] first duly sworn, was examined and testified
[23] as follows:
[24]    THE COURT: Now, what's the problem? Why
[25] doesn't he get his money? You want your money

## Page 5

[1] and he wants to know why you're not giving him
[2] his money.
[3]     MR. RYAN: I don't know, not to sound so
[4] intelligent. When Mr. Hatchigian filed his
[5] motion, I gathered he never received the
[6] release. So I answered by saying, Well,
[7] you'll get your money when you sign the
[8] release, which was sent to, I believe, Mr.
[9] Hobson -- Ms. Woodie might -- it was Mr.
[10] Hobson who was here the day we were supposed
[11] to start the trial, and it was instrumental --
[12]     THE COURT: You were represented by
[13] counsel at the time; weren't you?
[14]     MR. HATCHIGIAN: Yes.
[15]     MS. WOODIE: And, Your Honor, he told me
[16] to send a release to him.
[17]     MR. HATCHIGIAN: I agreed to settle the
[18] case. And my interpretation was to sign an
[19] order saying, if the case is settled,
[20] discounted, and ended, that's it. I had never
[21] been privy to any release that Ms. Woodie had
[22] submitted and I saw afterwards.
[23]     I'm not in agreement to that. It would
[24] be in violation of my civil rights to sign
[25] that release there, because that release is

## Page 6

[1] totally outrageous. Outrageous, prohibiting
[2] me from ever bringing a claim against a
[3] corporation over here. I'm not signing the
[4] release, that's over with.
[5]     What I agreed to sign --
[6]     THE COURT: Well, listen, don't tell me
[7] what you're not doing; okay?
[8]     MR. HATCHIGIAN: Okay. I'm sorry.
[9]     THE COURT: Because --
[10]     MR. HATCHIGIAN: I'm sorry. I apologize.
[11]     THE COURT: -- you've asked for my
[12] assistance in this matter, so don't tell me
[13] what you're not going to do. Tell me what the
[14] problem with the release was.
[15]     MR. HATCHIGIAN: So I'm asking to,
[16] respectfully, invalidate the settlement and
[17] schedule --
[18]     THE COURT: That, I'm not going to do.
[19]     MR. HATCHIGIAN: Okay.
[20]     THE COURT: I'm not going to do that.
[21] The question, here, is, we have to get you the
[22] money, and we have to get you the money in a
[23] way that the insurance companies can be sure
[24] that their client is released from this
[25] particular claim.

## Page 7

[1]     Now, the question I have for you is, was
[2] this a general release from the beginning of
[3] time until the end of earth, that it would
[4] scare off someone from signing it?
[5]     MS. WOODIE: It was for this unit, and
[6] that's what Mr. Hobson --
[7]     THE COURT: Let me see what --
[8]     MS. WOODIE: I have a copy.
[9]     THE COURT: Hand it up to the Court.
[10]     MR. RYAN: Pretty much, Your Honor.
[11]     MS. WOODIE: For the unit only, and it's
[12] associated equipment.
[13]     THE COURT: Well, this is very
[14] lawyer-like, but, in other words --
[15] Mr. Hatchigian, Hatchi -- try it for me again.
[16]     MR. HATCHIGIAN: That's okay.
[17]     THE COURT: I agreed to release your
[18] client from any and all claims surrounding the
[19] purchase of this particular thing. This
[20] doesn't look like it does that. It seems like
[21] it says that they deny everything, you deny
[22] liability. You go through a whole bunch of
[23] things which, basically, he doesn't have to
[24] agree to.
[25]     So if he -- if the release, because the

## Page 8

[1] settlement of this matter is -- and I
[2] remember, this is very lawyer-like and this we
[3] charge a couple hours in preparation of this,
[4] but, remember, I was in the same business. We
[5] charge a couple hours for this. This is much,
[6] much too complex and complicated for anyone to
[7] want to agree to without an attorney.
[8]     MS. WOODIE: We had an attorney.
[9]     THE COURT: No, but the attorney,
[10] apparently, went south on you. Where's your
[11] attorney?
[12]     MR. HATCHIGIAN: No, he's a friend of
[13] Mr. Ryan's. He suggested he might be able to
[14] work something out. He's not the attorney of
[15] record. He's not the attorney --
[16]     THE COURT: I don't remember him actually
[17] entering an appearance.
[18]     MR. RYAN: He didn't. He showed up the
[19] day of the trial, Your Honor.
[20]     THE COURT: Yes, as some kind of an
[21] advocate, without anything like this.
[22]     MR. HATCHIGIAN: Him and Mr. Ryan went to
[23] school together, they were friends, he thought
[24] they could work something out.
[25]     THE COURT: But the release --

Page 9

[1] Mr. Hatchigian, I agree with you, that this
[2] is -- even though this is an almost standard
[3] document that gets exchanged between lawyers,
[4] this is not the standard document that gets
[5] sent to clients, because it seems like they're
[6] giving away your children, and your rights to
[7] live, and your right to be a citizen of the
[8] United States. It seems like that; it's not.
[9] It's really innocuous, in terms of, it's a
[10] relatively harmless document, and I've seen so
[11] many of them.
[12] But, Counsel, can you create a release
[13] that would be -- that he releases your client
[14] from any and all claims surrounding the
[15] purchase of this item?
[16] MS. WOODIE: And its components?
[17] THE COURT: And its components. And you
[18] do that, and that's what he releases. Because
[19] he may want to sue your client for something
[20] else; he may want to sue you for something
[21] else. But this is something that makes him
[22] feel like he can't do that. And without
[23] Mr. Hobson explaining each and every line to
[24] him, which I'm not intending to do.
[25] Now, this is the issue, the motion to

Page 10

[1] compel is denied; however, the Court is
[2] ordering the defendants to prepare an
[3] appropriate release for the circumstances of
[4] this particular case. So that, as soon as you
[5] sign it, they'll give you the money.
[6] MR. HATCHIGIAN: May I suggest, with all
[7] due respect to the Court, a release that says
[8] it's settled, discontinued and ended? That
[9] will take care of the problem.
[10] THE COURT: Well, no. No. That doesn't
[11] take care of the problem. Because they have
[12] to be assured that you don't find another way
[13] to sue their client over the same thing in a
[14] different way.
[15] MR. HATCHIGIAN: Right.
[16] THE COURT: Settle, discontinue and end
[17] doesn't do that. That's why -- see, the
[18] release, plus the order to settle, discontinue
[19] and end, is what's necessary at all
[20] settlements of cases. So that their client is
[21] released from any and all claims related to
[22] the sale, purchase and installation of this
[23] particular air conditioner.
[24] Can we do that?
[25] MS. WOODIE: I think we can, Your Honor,

Page 11

[1] because I have all the component parts listed.
[2] I could, if you want me to, delete the second
[3] paragraph.
[4] THE COURT: Well, look, you know, I've
[5] given it consideration of 3,500, both of it
[6] paid by these guys to release defendants in
[7] this case from any and all claims surrounding
[8] the purchase of these items. And that you
[9] don't -- the liability, I don't care about
[10] that. You see, all that is just --
[11] MS. WOODIE: I think I can --
[12] THE COURT: All that is surplusage. I
[13] don't remember what we used to call it,
[14] surplusage, is that --
[15] MR. RYAN: Excess verbiage.
[16] THE COURT: Well, no, it's surplus
[17] verbiage, we can agree to that, that the Court
[18] doesn't like the release, but I'm ordering to
[19] simplify the release, make arrangements --
[20] Are the checks available?
[21] MS. WOODIE: Well, I need a W9 signed,
[22] Your Honor, and I brought it with me today.
[23] THE COURT: Work it out there. Go out to
[24] the other room and, either, handwrite the
[25] release, or something to that effect. Where's

Page 12

[1] the money?
[2] MS. WOODIE: The client has the money,
[3] because I have to --
[4] THE COURT: How fast can we get the
[5] money?
[6] MS. WOODIE: I don't know. Probably a
[7] week, I would guess.
[8] THE COURT: I understand the problem, but
[9] we're going to do this, the motion is denied,
[10] contingent upon them preparing an appropriate
[11] release that you can understand, and sign that
[12] with an order to settle and discontinue.
[13] You're going to go outside, you're going
[14] to do the W9 form, so that -- they're going to
[15] need your Social Security number, and put that
[16] down on there so that they can get a deduction
[17] for having paid you.
[18] I'm going to set you outside. If there's
[19] a problem with this, let the court officer
[20] know and we'll have a discussion on it.
[21] MR. RYAN: You want us to prepare a new
[22] release outside, Your Honor?
[23] THE COURT: If you can. I have a
[24] computer in here, we can type one out, I
[25] guess. But it's --

Page 13

[1] Where's your offices?
[2] MS. WOODIE: 2000 Market.
[3] THE COURT: I know where you are.
[4] MS. WOODIE: But I can get access to it
[5] at 2000 Market.
[6] THE COURT: Go outside and work it out.
[7] MR. HATCHIGIAN: Thank you.
[8] - - -
[9] (Short recess.)
[10] - - -
[11] THE COURT: What's the issue?
[12] MR. HATCHIGIAN: Okay. I have prepared a
[13] release, I'm willing to staple it to my
[14] 64-page complaint, releasing both defendants
[15] for everything that's in my 64-page complaint,
[16] which I think is fair, or at least it should
[17] be released.
[18] MS. WOODIE: Your Honor, it rambles, it's
[19] inconsistent. It's a document that I would
[20] feel comfortable litigating later, if that's
[21] the scope of the case.
[22] MR. RYAN: Your Honor, we pared-down the
[23] release that was originally sent, and I
[24] explained to Mr. Hatchigian, telling him I'm
[25] not his lawyer, but explained to him, and

Page 14

[1] there's only -- there's one issue that we've
[2] sort of come to odds with.
[3] THE COURT: What's the one issue?
[4] MR. RYAN: That -- this whole thing, sort
[5] of, originated because Mr. Hatchigian
[6] purchased a Carrier, as you know.
[7] THE COURT: I'm aware of the facts of the
[8] case.
[9] MR. RYAN: And he installed it himself.
[10] MS. WOODIE: And he represented he was a
[11] mechanical contractor.
[12] MR. RYAN: And under the terms of the
[13] instructions and all, these things have to be
[14] installed by a Carrier, a licensed person,
[15] which he is not. Well, not licensed, but a
[16] qualified person.
[17] THE COURT: That was the defense in the
[18] matter, I understand that.
[19] MR. RYAN: Right. And he's going -- the
[20] belief would be that he's going to do it
[21] again.
[22] MS. WOODIE: He says he's going to do it
[23] again.
[24] MR. RYAN: He says he's going to do it
[25] again.

Page 15

[1] THE COURT: Do it again to, who?
[2] MR. RYAN: He's going to file with
[3] another Carrier and put it in by himself.
[4] THE COURT: The question here, is, who's
[5] being released in this matter?
[6] MR. RYAN: Carrier and Peirce-Phelps.
[7] THE COURT: So what's the issue? So he's
[8] releasing Carrier?
[9] MS. WOODIE: He doesn't know how to
[10] install it. Not -- electrically, I'm not
[11] disputing that. But, Your Honor, he made
[12] several decisions not to do things that the
[13] instructions say, and if he did, indeed, have
[14] water or condensation in the unit, it was
[15] because of that.
[16] THE COURT: Well, that's the defense. I
[17] don't know whether that's -- that's a
[18] contested fact in this matter. So we're
[19] releasing Carrier?
[20] MS. WOODIE: Yes, for this unit and the
[21] associated equipment.
[22] THE COURT: And you're afraid he's going
[23] to buy another Carrier?
[24] MS. WOODIE: He said he was going to do
[25] it.

Page 16

[1] THE COURT: And try to install it again
[2] and then file another lawsuit?
[3] MS. WOODIE: Um-hum.
[4] MR. HATCHIGIAN: This is a package unit,
[5] Your Honor --
[6] THE COURT: No, don't tell me that. The
[7] question really is, is that, then it becomes a
[8] scam; do you understand? You buy it and then
[9] install it, then sue, that's what they're
[10] trying to prevent.
[11] MR. HATCHIGIAN: Yeah.
[12] THE COURT: So the question really is,
[13] they want you to stay away from buying and
[14] suing Carrier again for the same thing.
[15] MR. HATCHIGIAN: Right. I asked --
[16] THE COURT: Now, I remember this happened
[17] one time, and our eminent Mr. Sprague did the
[18] same thing with Verizon, and ended up
[19] releasing a particular claim and then starting
[20] another claim with the same plaintiff, and it
[21] became almost like a cottage industry for a
[22] while.
[23] MR. RYAN: There's a history here, Your
[24] Honor, that might suggest --
[25] THE COURT: So what kind of language

Page 17

[1] would you like to stop this from happening
[2] again?
[3]    MS. WOODIE: Your Honor, do you have the
[4] copy I gave you?
[5]    THE COURT: Yes, I have it here.
[6]    MS. WOODIE: It's the sentence that's the
[7] second to the last paragraph on page one.
[8]    THE COURT: No, that's making an
[9] admission that he doesn't have to do it. I
[10] don't like that, either. I also specifically
[11] acknowledge that any --
[12]    THE COURT REPORTER: I'm sorry, Your
[13] Honor, slow down, please.
[14]    THE COURT: The language that's being
[15] complained of -- is this the language you're
[16] **complaining of**: I also specifically
[17] acknowledge that any brand of Carrier
[18] air-conditioning equipment must be installed
[19] by a qualified licensed mechanical trade
[20] person, and that I am not a qualified licensed
[21] mechanical trade person.
[22]    MR. HATCHIGIAN: Right.
[23]    THE COURT: Why would he have to make
[24] that admission?
[25]    MS. WOODIE: Because if he goes and buys

Page 18

[1] another one and does it again --
[2]    MR. RYAN: First change the language --
[3]    MR. HATCHIGIAN: First of all, I am
[4] qualified, number one. And there's nothing --
[5] I asked Ms. Woodie to show me where it says in
[6] her manufacturer's instructions that you have
[7] to be a steamfitter. She can't find it. I am
[8] the qualified person. I will continue buying
[9] them, continue to install them, and if I have
[10] a problem, I will hold this corporation liable
[11] for it.
[12]    My release --
[13]    THE COURT: No, you're not going to do
[14] that.
[15]    MR. HATCHIGIAN: Okay.
[16]    THE COURT: No, you're not going to do
[17] that.
[18]    MR. HATCHIGIAN: My release, here, says
[19] to settle, discontinue in Philadelphia Common
[20] Pleas Court, No. 1506 --
[21]    THE COURT: No, your release is -- I'll
[22] tell you what I'm going to do, Mr. Hatchigian,
[23] if you don't begin to cooperate and understand
[24] what their issues are with you, I'm going to
[25] deny your motion to compel and that will be

Page 19

[1] the end of it. And then you'll be in a
[2] position here to either sign the release that
[3] they want or not get the money.
[4]    Now, you can't be unreasonable with me.
[5]    MR. HATCHIGIAN: No, I'm not being
[6] unreasonable.
[7]    THE COURT: Their position is, and what
[8] they're concerned about, they're settling with
[9] you, but they don't want you buying and
[10] installing any more Carrier air-conditionings
[11] and then come around and sue them again, which
[12] is a reasonable request.
[13]    What language would you like that you're
[14] not going to do that again?
[15]    MR. HATCHIGIAN: I'm not agreeable to
[16] that.
[17]    THE COURT: Okay. Well, then, the motion
[18] to compel is denied, and then you can sit on
[19] your settlement and try to file an appeal from
[20] this.
[21]    MR. HATCHIGIAN: Thank you.
[22]    THE COURT: There you are. You're
[23] excused.
[24]    ---
[25]    (Proceedings concluded.)

Page 20

---

[1] CERTIFICATION
[2]
[3]    I hereby certify that the proceedings and
[4] evidence are contained fully and accurately in
[5] the notes taken by me on the trial of the
[6] above cause, and that this copy is a correct
[7] transcript of the same.
[8]
[9]
[10]
[11]
[12]
[13]
[14]      JANENE L. LENOX
          Official Court Reporter
[15]
[16]
[17]
[18]    (The foregoing certification of this
[19] transcript does not apply to any reproduction
[20] of the same by any means unless under the
[21] direct control and/or supervision of the
[22] certifying reporter.)
[23]
[24]
[25]