# EXHIBIT
## "A"

AO 440 (Rev. 06/12) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Eastern District of Pennsylvania

DAVID HATCHIGIAN AND JOAN
RANDAZZO

_____
*Plaintiff(s)*

v.

CARRIER CORPORATION AND
PEIRCE-PHELPS

_____
*Defendant(s)*

)
)
)
)
)
)
)
)
)
)
)
)

Civil Action No.  20-4110

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*

*CARRIER*
*MARSHALL DENNEHEY, WARNER,*
*COLMAN GOGGIN, CAROLYN MICHELLE SCHWEIZER*
*2000 MARKET STREET, SUITE 2500, PHILA PA 19105*
*PIERCE-PHELPS JAMES F. RYAN SCHUBENLAND*
*+ RYAN P.C. 995 OLD EAGLE SCHOOL ROAD SUITE 588*
*WAYNE PA. 19103*

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you
are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ.
P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of
the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney,
whose name and address are:

DAVID HATCHIGIAN
2414 TOWNSHIP LINE
ROAD
HAVERTOWN, PA 19083

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint.
You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: _____8/24/20_____

*S/John Arrow*

_____
*Signature of Clerk or Deputy Clerk*

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

**DAVID HATCHIGIAN AND**
**JOAN RANDAZZO,**

               **Plaintiffs,**

**vs.**                                     **Civil Action No. 20-4110**

**COUNTY OF PHILADELPHIA,**
**COURT OF COMMON PLEAS**
**OF PHILDELPHIA COUNTY,**
**CARRIER CORPORATION,**
**AND PEIRCE-PHELPS,**                  **JURY TRIAL DEMAND**

               **Defendants.**

### AMENDED COMPLAINT

Plaintiffs DAVID HATCHIGIAN and JOAN RANDAZZO, file this amended pleading in their action against Defendant COUNTY OF PHILADELPHIA, Defendant CARRIER CORPORATION and Defendant PEIRCE PHELPS (hereinafter collectively "Defendants"), seeking a Declaratory Judgment pursuant to 42 Pa. C.S. § 7532 and alleging breach of settlement and denial of due process under the Pennsylvania and Federal Constitutions. Additionally, the claims previously filed by Plaintiff Hatchigian against Defendant Carrier and Defendant Peirce-Phelps in Philadelphia County Common Pleas Court on Sept. 20, 2015 under CP Case No. 150604314 have yet to be litigated and incorporated by reference and re-pled below as recited verbatim herein. A true copy of the Complaint in CP Case No. 150604314 is attached hereto as Ex. B.

### I.    INTRODUCTION

1.    Like thousands of homeowners across the country, Plaintiff Hatchigian purchased an air conditioner from the HVAC (heating, ventilation, and air conditioning)

1

experts at Carrier to cool his residence during the summer months.  Carrier advertises its product as specifically designed for residential use, and prices the product accordingly.

2.      But after installation, the unit degrades, de-composes, rots, cracks, splits, checks, splinters, peels, delaminates, flakes, soaks, expands, swells the surrounding wall where the unit is installed, causing the structure to develop wet mold and mildew, black spots, streaking and discoloration, and contaminating the air breathed by occupants with mold spores.

3.      In September of 2015, Plaintiff Hatchigian alleged the extensive mold damage to his Brentwood property (located @ 7512 Brentwood Road, Philadelphia, PA 19151 (hereinafter "the Property") in the state court action, which requested both injunctive relief and money damages (See Case No. 150604314. First Judicial District of Pennsylvania, Court of Common Pleas of Philadelphia)(hereinafter "state court action"; "underlying action", Case No. 150604314")   Ex. B

4.      The state court action alleged that warrantor Carrier refused to reimburse his replacement costs and replaced the defective unit with other defective units, denying warranty coverage for uninstallation, removal and reinstallation labor, costs to repair structural damage to walls and roof at the Property, residential mold remediation service charges, lost rent and medical fees for testing and diagnosis of developing mold-related health conditions, none of which would have arisen but for Carrier's breaches and negligence.  See Counts I through Count V, Complaint, No. 150604314. Ex. B

5.      The state court action was called to a non -jury trial on Jan. 23, 2017 before the Honorable Gene Cohen, at which time it became evident there was no cause

2

of the alleged roof leak and mold contamination at the Property other than Carrier roof top unit and that seller Peirce's post-installation repair service had been insufficient to stop the roof leak and the consequential property damage to Plaintiffs' residence caused by the Carrier HVAC unit. See Common Pleas Complaint, No. 150604314, at ¶¶ 4-26. Ex. B

6.      The Carrier air conditioner litigated in the state court action came with no mold warning when installed and Carrier does not provide the warranty directly to consumers at the time of sale. In the absence of a duty to recall the product, Defendant Carrier's sole defense relied on a disclaimer of consequential damages provided to Hatchigian only after he submitted his warranty claim to Carrier (i.e., long after the original sale) and purporting to waive all of Hatchigian's costs and charges (see Common Pleas No. 150604314, Complaint at P1- P5). Carrier's attorney could not refute the company's notice of the fact that the amount claimed under the warranty far exceeded the original purchase price of the Carrier unit, so that Defendant Carrier's subsequently- disclosed limited warranty and the post-sale repair attempts were no remedy at all; it was well aware of the mold-inducing effect of proper installation when placing the defective air conditioner with the known defect back on the market. Common Pleas No. 150604314, Complaint, at ¶76.

7.      Counsel for Carrier offered to settle the case on the eve of trial but knowingly engaged in settlement conduct that resulted in a sham settlement process, depriving Plaintiff Hatchigian a day in court on his legal claims. Therefore, the instant Amended Complaint is filed to vindicate Plaintiffs' individual rights as U.S. consumers and alleges constitutional violations, damages, injunctive and declaratory relief under 42

USC §1983 seeking this Court's clarification of consumers' settlement rights regarding future actions commenced in the state courts of Pennsylvania.

## II.     JURISDICTION AND VENUE

8.     Plaintiffs state violations of the state and Federal Constitutions against Defendant County of Philadelphia and Defendant Court of Common Pleas of Philadelphia County, thereby conferring jurisdiction on this Court pursuant to 28 U.S.C. § 1331 with respect to Counts II and III. [1]

9.     Additionally, this Court has subject matter jurisdiction pursuant to 28 USC § 1332(a) as to Counts I, VI-XI (pled against Defendants Carrier and Peirce and seeking $50,000 in exemplary damages plus compensatory damages of approximately $30,000.00 including the purchase price of the subject Carrier HVAC product, $15,000.00 in costs to uninstall and replace the subject Carrier unit, loss of the use of their home, $2000.00 in mold remediation charges and mold-related expenses, $1,000.00 for HVAC inspection, approximately $10,000.00  in lost rents, court fees and litigation expenses including $5,000.00 for legal research, and $3,000.00 in settlement funds foregone under the Settlement Agreement)

10.     The value of these claims exceeds $75,000 and these counts involve citizens of different states and citizens of a foreign state who are not residents of a state of the United States. Defendant PEIRCE-PHELPS is a Delaware corporation engaged

---

[1] The Plaintiffs allege unconstitutional actions by Defendant County of Philadelphia and Defendant Court of Common Pleas of Philadelphia County which have denied Plaintiff Hatchigian the exercise of his constitutional rights, that their supervision of the settlement process in the state court action was in a manner as to deprive Hatchigian of his civil rights under the color of state law and violate clearly established due process rights belonging to him and guaranteed him under the Constitution of the State of Pennsylvania and the United States Constitution.

4

in the sale and distribution of air conditioning and heating systems, and was recently

acquired by Watsco, a Florida entity headquartered at 2665 South Bayshore Drive,

Suite 901 Coconut Grove, Florida 33133 U.S.A. Defendant Carrier Corporation is a

Delaware corporation. Until 1990, its principal place of business was located at 6304

Thompson Road, Syracuse, New York 13221, U.SA. In 1990, its corporate "nerve

center" was moved to One Carrier Place Farmington, Connecticut 06032. Contrary to

Carrier's prior Motion to Dismiss the entity called Carrier Global Corporation, based in

Palm Beach Gardens, Florida, is not a party in the instant action. (See Note 2, MOTION

OF DEFENDANT CARRIER CORPORATION TO DISMISS PURSUANT TO FEDERAL

RULE OF CIVIL PROCEDURE 12(b)) (ECF No. 9) ("It should be noted that the

Defendant Carrier Corporation is a Delaware corporation with a principal place of

business in Florida. It is not New York corporation")

11.    This Court also has federal question jurisdiction as to Count V (pled

pursuant to 42 U.S.C. § 1983) requesting prospective declaratory relief as the claims

brought in the state court have yet to be adjudicated and should have been restored to

the civil trial calendar once a conforming settlement release failed to materialize in

accordance with the parties' prior stipulated settlement and the settlement court's

explicit instructions.

12.    Venue is proper in the Middle District of Pennsylvania under 28 U.S.C. §

1391(b)(1), since Defendants reside in the district; alternatively venue is proper under

Section 1391(b)(2) because a substantial portion of the events or omissions giving rise

to the present claim occurred in the district. See id. at § 1391(b)(2).

**III.    THE PARTIES**

5

13.     Plaintiff David Hatchigian and Plaintiff Joan Randazzo are residents of Havertown, Upper Darby Township, Delaware County, Pennsylvania, United States.

14.     Defendant County of Philadelphia is a county of the Commonwealth of Pennsylvania.

15.     Defendant PEIRCE-PHELPS (hereinafter, "Peirce") is a Delaware corporation engaged in the sale and distribution of air conditioning and heating systems, and was recently acquired by Watsco, a Florida entity headquartered at 2665 South Bayshore Drive, Suite 901 Coconut Grove, Florida 33133 U.S.A.

16.     Defendant CARRIER CORPORATION (hereinafter, "Carrier") is a Delaware corporation engaged in the designing, engineering, and installation of air-conditioning and temperature-control systems and is one of the fifty (50) largest HVAC distributors in the country.  Defendant Carrier is incorporated in Delaware and maintains its principal place of business at One Carrier Place Farmington, Connecticut 06032 United States.

## IV.     GENERAL ALLEGATIONS

### A. FACTS IN THE UNDERLYING ACTION

17.     The Plaintiffs bought the Carrier product litigated in state court, a Carrier rooftop condensing air conditioning unit, Model 50GL, Serial # 3805041639 (hereinafter "roof top unit") from HVAC distributor Peirce in 2005.  The unit was purchased for the couple's personal and household use and warranted to be in good working condition at the time of Peirce's 2005 installation in the roof of the Property. See Common Pleas Complaint, No. 150604314, at ¶8) The mold inducing defect of the air conditioning unit was not apparent at sale or upon the first two post-installation inspections by the seller.

6

(Common Pleas Complaint, No. 150604314, at ¶¶ 12-21). Married Plaintiffs were living in the ground floor apartment at the time, Hatchigian was the owner-lessor of the Property, and there were no mold issues anywhere in the Property. (Common Pleas Complaint, No. 150604314, at ¶ 12 and ¶ 20)  Ex. B

18.     As recommended by Carrier's Guide to Operating and Maintaining your Single-Packaged Electric Cooling Unit, Plaintiffs utilized unit for the principal function it was advertised to perform, regularly replaced the filters in the roof top unit (at least twice annually from 2005-2013) and maintained the filters in accordance with the manufacturer's specifications and otherwise specifically complied with the use and maintenance recommendations in Carrier's written warranty. They maintained and cleaned the unit, including the interior coils and blower wheels, and periodic operational checks were performed by Plaintiffs, including for thermostat cooling set points. These checks were performed twice annually, in 2008, 2011, and again in 2013 (Id., at ¶10), and in the course of the check in 2013, homeowner Hatchigian discovered mold growth as well as water damage near and around the roof of the Property. (Id. at ¶11) Unbeknownst to Plaintiffs at the time of sale, their formerly mold-free Property would become temporarily unfit for habitation when the product malfunctioned. Carrier's product came with drainage components intended to remove liquid condensate and prevent condensate build-up, but these failed to function, triggering widespread moisture seepage below the unit in quantities sufficient to cause mold growth. (Id., at ¶8 and ¶42) Carrier's distributor's representation of waterproofness and the unit being designed for roof top installation and residential use led the Plaintiffs to believe the unit was suited for normal residential use and nonhazardous; without the represented

"waterproof" quality of the product Plaintiffs would never have agreed to purchase or installed the Carrier unit at the Property. (Id. at ¶8 and ¶20)  Carrier's product malfunctioned in the absence of any preexisting defects in the Property's roof, roof paneling at the installation site or in the flooring or surrounding wall where mold eventually appeared. The upper floor apartment of the Property was periodically leased out to tenant occupants since 2014. During the summer months the HVAC unit drew humid air into upstairs of the building and spread mold, contaminating the upstairs apartment (Id., at ¶4, ¶19, ¶34) In June 2015, Plaintiffs' vacated the Property, abandoning their apartment and the lease with Plaintiffs, citing water damage and health concerns due to mold infestation in ductwork, including recurring sinus and bronchial infections and headaches triggered by the effect of insufficient air return on airways triggered by the exposure to mold spores. (Id., at ¶49, ¶57, ¶54) Owner-lessor was left with lost rents and no ability to re-lease.

19.     Plaintiff Randazzo and Plaintiff Hatchigian were forced to temporarily vacate the Property from June to July 2015 during professional mold remediation.

20.     The warranty document only later supplied by Carrier's representative stated that the roof top unit came with five (5), ten (10) and fifteen (15)-year warranties from the original installation date. (See copy of "Extended Protection Warranty" from Carrier Customer Relations response with attachments, dated March 11, 2015, 3:17 p.m.) (CP #150604314, Compl.Ex. 15)  The optional filter rack Filter Rack Accessory, Parts # 99080302 or 99080262 shipped by Peirce Phelps had dimensions that did not fit the subject unit. (CP #150604314, Compl. Ex.'s 10, 11, 25, 28-29)

8

21.     After the roof top unit failed in its intended use and showed itself to be defective and dangerous, Carrier denied the unit was waterproof and dismissed the results of the seller's inspection and written confirmation that 100% of the mold at the Property was directly traceable to the defectively designed HVAC system and the Carrier unit's inability to process condensate or with defective installation, See Elite Water Damage Restoration, Inc. report ("EWDR") (CP #150604314, Compl. Ex.'s 55-90)

22.     A follow-up inspection was conducted HVAC technician Mr. Vagnozzi on February 27, 2015; as with the initial inspection the sheet metal screws in the unit's housing were resealed and Vagnozzi verbally warranted no further roof leaks, but the weather was too cold to spray the unit to check for moisture levels. The third inspection of the Property and the unit was conducted in July 2015 and the roof leak remained. Seller Peirce and the third party EWDR each independently verified that water was entering Plaintiffs building via the rooftop unit; according to EWDR's inspectors until the unit was replaced it would continue to generate mold, making the building unfit for human habitation. The exterior of the Property was damaged by the mold growth. Plaintiffs lost the use of their home, were subject to the diminution of the value of the Property and incurred $1,700.00 for professional mold remediation services, additional costs in contracting fees, labor, materials to renovate to prevent long term mold effects of the malfunction, and paid out of pocket fees for laboratory testing. Vagnozzi's inspection results led to Carrier's offer of settlement led to settlement negotiations. (See Settlement Release and Agreement, *D.H. vs. Carrier & Pierce-Phelps* #150604314), but Carrier failed to provide any of the warranted repair and no restitution has been

9

forthcoming from Peirce or Carrier. Plaintiffs sustained $10,000.00 in profit and rents, including $2,700.00 in lost rents during mold removal and $1,000.00 to have the HVAC expert inspect the HVAC system, plus additional sums to pursue the state court action, bringing the current balance of the Plaintiffs' out of pocket losses with no offsets or credits applied, to approximately $30,000.00. None of this outlay was reimbursed by Carrier or Peirce Phelps. Plaintiffs remain at risk of frequent respiratory infections initially caused by mold bacteria.

### B. THE UNDERLYING ACTION ("THE STATE COURT ACTION")

23.    The state court action was called to a non -jury trial on Jan. 23, 2017 before the Honorable Gene Cohen. Defendant Carrier did not offer to settle the case until the eve of trial.

24.    Carrier procured Hatchigian's consent to the $3,000.00 reduced figure by counsel's representation to Hatchigian that a limited release would be executed post-hearing. Before being read into the record, the agreed-upon settlement terms included delivery of $3,000.00 and submission by Carrier's attorney of a corrected, revised release in exchange for the dismissal of all of homeowner David Hatchigian's causes of action against Defendant Carrier.

25.    The scope of the release was treated by the trial court as a material term of the parties May 21, 2018 settlement agreement.  See *David Hatchigian v. Carrier Corporation*, 150604314, Notes of Testimony, Apr 18, 2017, P5-P6, P9, Lines 25-11:9, P12, Lines 8-12 (Ex. J).

10

26. Carrier inserted a waiver of all of the plaintiff purchaser's rights to purchase any Carrier product or bring any legal claims in any court connection with such future purchases.

27. This language was never legally mandated in the first instance, and Judge Cohen found it unconscionably broad under the circumstances.

28. Trial Judge Cohen also made it clear to both sides that the court's denial of Hatchigian's pending motion to compel was strictly "contingent" on Carrier submitting an appropriate version of the release that did not contain this language.

> THE COURT: *I understand the problem, but we're going to do this, the motion is denied, contingent upon them preparing an appropriate release that you can understand, and sign that with an order to settle and discontinue.*
>
> - *David Hatchigian v. Carrier Corporation*, 150604314, Notes of Testimony, Apr 18, 2017, P 12, Lines 8-12 (Ex. J)

29. Judge Cohen agreed with Hatchigian regarding the propriety of Carrier's expansive release provision and found no legitimate reason to include the waiver language as to future purchases and claims, and ordered that the matter be marked settled, and the docket entry for Jan. 24, 2017 stated: "SETTLED AFTER ASSIGNMENT FOR TRIAL. SETTLEMENT PLACED ON RECORD. BY THE COURT: G. COHEN, J 1/23/17." This entry links to the Trial Worksheet signed by Judge Cohen and dated Jan. 23, 2017, which was entered into the docket on Jan. 24, 3017. The docket for Jan. 24, 2017 also reflects that Rule 236 notice was given on that date. At no point during the Jan. 23, 2017 settlement conference did counsel give any indication that Carrier's attorney would simply re-introduce language rejected by Judge Cohen when memorializing the settlement release. Once the Settlement Agreement had been read into the record with both sides and their respective counsel present, counsel for

11

Carrier verbally re-confirmed the material caveat that the release terms would be reduced to a new writing that omitted the overbroad prohibitive language as to future purchases and claims.

30.     Defendant Carrier then breached the Settlement Agreement by unilaterally modifying the mutual release recorded on Jan. 23, 2017 and including the language rejected by Judge Cohen, i.e., the memorialized release document presented to Plaintiff for signature post-hearing contained the unconscionably broad waiver of future rights, and the promised memorialization was never presented for Plaintiff's signature.

31.     Afterwards, the Common Pleas Court and Philadelphia County approved settlement counsel's purposefully waiting till after Trial Judge Cohen's Jan. 23, 2017 settlement hearing to submit the nonconforming version of their release to Plaintiff as a condition of payment/settlement enforcement.

32.     The document generated post-hearing violated the trial court's explicit guidance to omit all general language of waiver as to all future purchases and claims in relation to Carrier products.

33.     At no point did Hatchigian acquiesce in Carrier's unauthorized, ad hoc modification or counsel's bad faith engagement in the settlement process. As was known to Defendant Carrier and its settlement counsel, consumer Hatchigian had never bargained for or agreed to a release of unlimited scope.

34.     Carrier was at all times on notice when participating in the underlying settlement process, that the opposing party was neither willing nor required to sign such a waiver as a matter of law but he writing submitted to Plaintiff after Jan. 23, 2017 materially departed from the agreed-upon terms of settlement in a manner to

12

contravene the judge's finding that precluding plaintiff from purchasing future Carrier

products or bringing a future claim in relation to any future purchase was

unconscionably broad.

35.     When Carrier continued its attempts to procure his signature on the

broader version of the settlement by withholding the settlement check, Hatchigian

moved to invalidate the settlement and restore the case to the trial calendar.  (Ex. E)

There was a hearing before the trial judge on the motion, which Carrier's attorney

attended and refused to perform the Settlement Contract because Hatchigian was being

unreasonable and should be forced to sign any release offered. (Ex. F) Plaintiff moved

for a rehearing on the propriety of Carrier's written release by appealing the order

denying the motion. (Ex. G), which was denied on July 5, 2017 (Ex. I)

36.     Based on Counsel's settlement conduct, the nonconforming release was

never made a part of the Settlement Agreement recorded on Jan. 23, 2017 as a matter

of law, yet the defendant Court and the defendant County ignored settlement counsel's

misrepresentations regarding the bargained-for settlement release when denying him

relief on the Motion to Invalidate; Philadelphia Common Pleas not only approved

counsel's lack of candor when presenting the nonconforming release and informing him

that it was in his best interests to execute it, but upheld this conduct upon Plaintiff's

motion and in subsequent appeals; the County was at all times noticed of the fact that

its supervision of the underlying settlement would insure Plaintiff Hatchigian received

neither a jury trial on the merits nor the benefit of a standard settlement process.

37.     At a minimum, settlement counsel's departure from the release terms

represented by counsel to the court on Jan. 23rd  raised the issue of settlement validity

13

and a question of law whether the Settlement Agreement became law of the case. See In re Estate of Riddle (Pa. Super. Ct., 2018) (Due to ambiguities and undetermined matters which rendered the settlement agreement impossible to understand and enforce, the agreement was not the law of the case and was properly set aside.)

38.    Upon ruling on settlement validity and dismissing Plaintiff's appeals, the Defendant County of Philadelphia failed to restore Hatchigian's matter to the civil docket, and Plaintiff Hatchigian was deprived of a day in court on his still-disputed claims as a result.

## COUNT I
## BREACH OF SETTLEMENT
### (Against Defendant Carrier Corporation)

39.    The allegations of Paragraphs 1 to 46 are incorporated herein as if re-alleged in full.

40.    Plaintiff David Hatchigian and Defendant Carrier entered into a Settlement Agreement that was fully executed by all parties and their respective counsel no later than on or about Jan. 23, 2017.

41.    Pursuant to the terms of the Settlement Agreement, Defendant Carrier was required to deliver $3,000.00 and provide a corrected copy of the release document in exchange for the dismissal of all of homeowner Hatchigian's causes of action against Carrier.

42.    Plaintiff Hatchigian performed all material conditions, covenants and promises required to be performed on his part in accordance with the terms and conditions of the Settlement Agreement.

14

43.     Defendant Carrier intentionally and materially breached the Settlement Agreement by withholding payment and making performance contingent on his execution of a release that materially deviated from the settlement terms mutually recorded in the presence of Judge Cohen on Jan. 23, 2017.

44.     Defendant Carrier's breach of the Settlement Agreement constitutes action taken by Defendant intentionally and in bad faith.

45.     These actions have caused Plaintiff unnecessary damage and expense including, without limitation, the necessity for pre-litigation efforts to obtain Defendant's compliance with the terms of the Settlement Agreement and the bringing of successive appeals as well as the instant action to obtain durable relief from Defendant's fraudulent and deceptive settlement practices.

46.     Defendant Carrier has not cured its material breaches of the Settlement Agreement, and said breaches have caused further damages to Plaintiffs, including, without limitation, the damages on his claims against Carrier in Case No. 150604314, $3,000.00 in foregone settlement funds, Plaintiffs' foreseeable, consequential damages including attorneys' fees, legal research costs and expenses for litigation which was to be resolved by the settlement.

47.     As a direct result of Carrier's breach of the Settlement Agreement, Plaintiffs have now incurred foregone damages and settlement proceeds well in excess of $30,000.

48.     None of this additional outlay of resources and expenses was incurred by Plaintiff if Defendant had simply complied with the Settlement Agreement.

15

49.     As a direct result of Defendant County of Philadelphia's total failure to cure its oversight when deciding Plaintiff's Motion to Invalidate and/or when granting Hatchigian's appeals of the release issue, Hatchigian was deprived of due process and the exercise of constitutional rights guaranteed him under the Constitution of the State of Pennsylvania and the United States Constitution.

50.     In addition, Plaintiffs herein are entitled to an award of damages for Defendants' breach, including consequential and special damages in the form of attorneys' fees, costs and expenses, together with interest on all the damages that have accrued, both before and after judgment.

## COUNT II

## VIOLATION OF THE UNITED STATES CONSTITUTION - FOURTEENTH AMENDMENT: DUE PROCESS

## (Defendants Philadelphia County and Court of Common Pleas of Philadelphia County)

51.     The allegations of Paragraphs 1-58 are incorporated herein as if re-alleged in full.

52.     When denying Hatchigian's Motion to Invalidate and subsequent appeals, the Defendant County of Philadelphia disregarded that civil actions are due to restored in the event settlements fail to materialize in the manner herein complained of.

53.     Denying Plaintiff Hatchigian's motion to invalidate and subsequent appeals of the release issue without restoring his case to the Jury Trial Calendar also deprived  Mr. Hatchigian of the jury trial he paid the County for, violating notions of 'fundamental fairness' inherent in the concept of due process.

54.     The Due Process Clause of the Fourteenth Amendment to the United States Constitution prohibits states from depriving its citizens of fundamental rights without due process of law.

55.     As materially revised after the fact by Carrier's counsel with the approval of defendant County and the defendant Court, the Settlement Agreement infringed on the due process rights of the purchaser/ consumer under the federal Constitution.

56.     In the underlying action Carrier's fraud on the court was facilitated by the Defendant County and the Defendant Court when exercising their supervisory authority over the settlement in a manner that would inevitably result in a one-sided settlement process.

57.     The resultant settlement process has now infringed Plaintiffs' rights under the substantive and procedural prongs of the Due Process Clause.

58.     Due to Carrier's unilateral breach of the recorded settlement terms and ad hoc settlement conduct, Hatchigian was deprived of a trial on the merits of his claims.

59.     The right to judicial proceedings is a fundamental right, and laws that infringe on that right are subject to strict scrutiny. See Zablocki v. Redhail, 434 U.S. 374, 388 (1978). "To survive strict scrutiny, a state must do more than assert a compelling state interest-it must demonstrate that the law is necessary to serve the asserted interest." Burson v. Freeman, 504 u.s. 191, 199-200 (1992).

60.     In addition, neither the County of Philadelphia nor the Common Pleas Court have any compelling state interest in enforcing contracts of adhesion like the settlement agreement here. Whereas Settlements are to be encouraged it nevertheless offends due process if a settling party's unilateral acts could bind the other party without

17

notice and an opportunity to be heard. *Jennings v. United States*, 374 F.2d 983, 986 (4th Cir.1967). "Deciding whether to try a case to judgment or to settle it involves elements of legal evaluation, of financial capacity to take risk, and of appetite for court room conflict which vary widely among litigants." *Whisenant v. Brewster-Bartle Offshore Co.*, 446 F.2d 394, 402 (5th Cir.1971) (*quoting Tankrederiet Gefion A/ S v. Hyman-Michaels Co.*, 406 F.2d 1039, 1043-44 (6th Cir.1969)).   Established doctrine provides a framework for resolving the conflict between the policies of encouraging settlements on one hand and protecting the interests of the settling parties on the other.  It remains a strong, prevailing public policy in Pennsylvania to encourage voluntary settlements. See *Taylor v. Solberg*, 566 Pa. 150, 157-58, 778 A.2d 664, 667 (2001). The Supreme Court of the United States has recognized that "'We need not, indeed we cannot, draw a mathematical bright line between the constitutionally acceptable and the constitutionally unacceptable that would fit every case. We can say, however, that a general concern of reasonableness ... properly enters into the constitutional calculus.' " *Pacific Mutual Life Ins. Co. v. Haslip*, 499 U.S. 1, 18, 111 S.Ct. 1032 1043, 113 L.Ed.2d 1 (1991).

     61.    Therefore, the Plaintiffs respectfully request this Court's declaration that the current settlement practice of the County of Philadelphia as hereinabove alleged constitutes a violation of a plaintiff's substantive and procedural due process rights under the Fourteenth Amendment of the United States Constitution.

     62.    This Count seeks a declaration that the County of Philadelphia by (i) upholding the underlying Settlement Agreement despite Carrier's bad faith conduct of the settlement process (ii) while denying Hatchigian any ability to enforce the Settlement Agreement as stipulated to and (iii) failing to restore the case to the civil trial docket

thereafter - - has unlawfully deprived plaintiff Hatchigian of his due process rights as guaranteed him under the United States Constitution. 42 Pa. C.S. § 7532.

## COUNT III

## VIOLATION OF THE PENNSYLVANIA CONSTITUTION -

### (Defendants Philadelphia County and Philadelphia Court of Common Pleas)

63.    The allegations of Paragraphs 1-79 are incorporated herein as if re-alleged in full.

64.    Article I, §6 and §11 of the Pennsylvania Constitution recognize a right to judicial proceedings states, in pertinent part:

**§6. Trial by jury.**

*Trial by jury shall be as heretofore, and the right thereof remain inviolate. The General Assembly may provide, however, by law, that a verdict may be rendered by not less than five-sixths of the jury in any civil case.*

**§11. *Courts to be open; suits against the Commonwealth.*** *All courts shall be open; and every man for an injury done him in his lands, goods, person or reputation shall have remedy by due course of law, and right and justice administered without sale, denial or delay.*

65.    Defendant Carrier's settlement conduct in the state court was motivated by Plaintiff Hatchigian's attempt to exercise his constitutional rights as guaranteed him under the Constitution of the State of Pennsylvania and the United States Constitution. At the same time, the Defendant County has allowed Carrier and its settlement counsel to violate the judicially approved Settlement Agreement with impunity. Its permission was granted based on no more than Carrier's ad hoc request for release execution,

19

even after the release submitted deviated from the scope of the release agreed upon on Jan. 23, 2017.

66.     As Carrier and counsel intended throughout the settlement process, the memorialized release term of the Settlement Agreement was nonconforming and departed from the Jan. 23, 2017 recording, but the County and the Court failed to detect the rejected waiver language and the impropriety of the Carrier's settlement conduct was compounded when denying relief upon Hatchigian's motions, dismissing each appeal of the issue and subsequently failing to restore the action to the civil trial docket.

67.     When reviewing whether a state action unconstitutionally deprives a person of a protected interest, a substantive due process inquiry balances "the rights of the parties involved subject to the public interests sought to be protected." Johnson v. Allegheny Intermediate Unit, 59 A.3d 10,20 (Pa. Cmwlth. 2012).

68.     The County's existing, frequent practice (of failing to prevent or sanction the settlement conduct engaged in by Defendant Carrier's settlement attorney, while denying the consumers the ability to enforce or set aside the settlement, and then failing to restore litigation the civil jury trial docket once a conforming settlement release fails to materialize) has effectively exposed  Pennsylvania state court plaintiffs including David Hatchigian, to the unchecked malfeasance of corporation counsel and deprived him of due process on his legal claims.

### COUNT IV
### VIOLATIONS of 42 U.S.C. § 1983 PROSPECTIVE INJUNCTIVE RELIEF
### (Defendants Philadelphia County and Philadelphia Court of Common Pleas)

69.     The allegations of the Paragraphs 1-76 are incorporated herein as if re-alleged in full.

20

70.    This count is for the above violations of Plaintiff Hatchigian's civil rights actionable under 42 USC §1983 that occurred after Plaintiff brought an action in Philadelphia Country Common Pleas Court.

71.    There is a reasonable probability of irreparable future injury to the plaintiffs if Defendants are not enjoined from continuing the alleged settlement practices and procedures in the future.

72.    The plaintiffs will suffer irreparable injury unless the injunction issues.

73.    The injury to the plaintiffs outweighs whatever damage the injunction may cause defendants.

## COUNT V
## DECLARATORY JUDGMENT

74.    The allegations of the Paragraphs 1-81 are incorporated herein as if re-alleged in full.

75.    Plaintiffs were initially damaged by Defendant Carrier's breach of settlement, breaches of warranty as to the defectively designed goods, and refusal to address their mold-related damages claim despite actual notice of the recurring defect when the goods were placed on the market.

76.    Later, Carrier's bad faith settlement conduct in the state court action and the Count of Philadelphia's lack of oversight resulted in Plaintiff being denied a day in court on the claims he brought in the state court.

77.    To prevent this total denial of due process, Plaintiff seeks a judgment from the Court declaring that the parties' settlement is hereby voided and that the state court action is hereby reinstated. 42 Pa. C.S. § 7532 and declaring that by denying

21

Hatchigian's timely attempts to obtain a rehearing on the release issue or enforce/set aside the Settlement Agreement, the County of Philadelphia ultimately deprived Hatchigian of a day in court on his claims in the state court action, violating notions of 'fundamental fairness' inherent in the concept of due process as defined by the Constitution of the State of Pennsylvania and the United States Constitution.

## COUNT VI through COUNT XI

## [Incorporating by reference Counts I - V in the State Court Action (CP Case No. 150604314)

78.     The allegations of the above paragraphs are incorporated herein as if re-alleged in full.

79.     In addition, Plaintiffs incorporate by reference Counts I through V of the Complaint originally filed by Plaintiff Hatchigian in the state court action [See Complaint, Common Pleas #150604314, filed Sept. 20, 2015)]   These counts are re-alleged as if restated verbatim herein as Counts VI-XI of this Amended Complaint.

80.     Upon further information and belief, Defendant Carrier has placed funds in reserve to deal with future losses arising from similar consumer claims stemming from the "repair and replace" procedures alleged in Counts VI through XI. Regardless of the reservation of such funds, Carrier may not rely on product warranty terms purporting to exclude all liability for undisclosed out of pocket fees for replacement labor as well as for purchaser's mold remediation charges and mold-related diagnostic laboratory testing, none of which are consequential or "incidental" to Plaintiff's original purchase and/or normal product use under state warranty law. Plaintiffs are entitled to recover

their statutory costs and reasonable and necessary attorneys' fees in the state court action including those incurred as a result of trial and/or prosecuting or defending an appeal up to the Supreme Court, and all costs of court.

### JURY DEMAND

The Plaintiffs demand a trial by jury on all issues.

### ATTORNEYS' FEES AND COSTS

The Plaintiffs demand reasonable attorney's fee and costs of suit. [2]

### PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs respectfully request judgment against Defendants, as follows:

- A) Declaring that the Jan 23, 2017 Settlement Agreement is unconstitutional and therefore void, that enforcement of its terms is enjoined. 42 Pa. C.S. § 7532, and that CP Case No.150604314 is hereby reinstated and remanded for a trial on the merits in the Philadelphia Court of Common Pleas;
- B) Restraining Defendant Carrier Corporation from continuing to market, sell or distribute the subject mold-inducing roof top unit;
- C) Declaring pursuant to 42 Pa. C.S. § 7532 that Defendant Carrier Corporation and the County of Philadelphia have unlawfully deprived David Hatchigian of procedural and substantive due process guaranteed him under the United States Constitution and Article I of the Pennsylvania Constitution;
- D) Awarding exemplary damages for willful acts deemed to have been performed with malice, and/or gross negligence, in the amount of Fifty Thousand Dollars ($50,000.00) and actual damages suffered by the Plaintiffs due to the conduct hereinabove described, for the Sum Certain of Thirty Thousand Dollars ($30,000.00), together with prejudgment interest thereon;
- E) Awarding Plaintiffs' costs, expenses and attorneys' fees; and
- F) Granting such other and further relief as this Court may deem appropriate.
- G) For Sum Certain of Seventy Five Thousand Dollars ($75k)

**Dated: December 18, 2020**

---

[2] See *U.S. Claims, Inc. v. Dougherty*, 914 A.2d 874 (Pa. Super. Ct., 2006) (concluding plaintiff was entitled to attorney's fees, costs and damages for delay under Pa.R.A.P. 2744 although proceeding pro se.); *Pickholtz v. Rainbow Technologies, Inc.*, 284 F.3d 1365, 62 USPQ2d 1340 (Fed. Cir. 2002) (awarding the pro se equivalent of attorney's fees where counsel's conduct in the underlying state court action was vexatious and unreasonable)

Respectfully submitted,
*David Hatchigian*

_____

**DAVID HATCHIGIAN,**
**PLAINTIFF PRO SE**
*Joan Randazzo*

_____

**JOAN RANDAZZO,**
**PLAINTIFF PRO SE**


**December 18, 2020**

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing instrument has been served upon the Attorney of Record of all parties to the above captioned case in accordance with Pennsylvania Rules of Civil Procedure on this 20 day of December, 2020 by the following:

Via U.S.P.S 3817:

MARSHALL, DENNEHEY, WARNER, COLMAN GOGGIN

CAROLYN M. SCHWEIZER, ESQUIRE

2000 Market Street,

Philadelphia Pa. 19103

215-575-4569 fax 215-575-0856

cmschweizer@mdwcg.com

JAMES F. RYAN ESQUIRE

SCHWABENLAND & RYAN, P.C.

995 Old Eagle School Road

Suite 306

Wayne Pa. 19087

jfryan@jfryanlaw.com

CITY OF PHILADELPHIA LAW DEPARTMENT

CLAIMS COORDINATOR, CLAIMS UNIT

ONE PARKWAY BUILDING,

1515 ARCH STREET,

14TH FLOOR,

PHILADELPHIA PA. 19102-1595

215-683-5410

Exhibit "B"

FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
COURT OF COMMON PLEAS OF PHILADELPHIA

DAVID HATCHIGIAN
2414 TOWNSHIP LINE ROAD
HAVERTOWN PA. 19083
610-446-7257

JULY TERM 2015

VS

CARRIER CORPORATION
P.O. BOX 4808, CARRIER PARKWAY
SYRACUSE, NY. 13221

NO. 150604314

PEIRCE -PHELPS
JOSEPH P. VAGNOZZI
516 EAST TOWNSHIP LINE ROAD
BLUE BELL, PA. 19422

JURY TRIAL DEMAND

NOTICE TO DEFEND

| NOTICE | AVISO |
|---|---|
| You have been sued in court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint of for any other claim or relief requested by the plaintiff. You may lose money or property or other rights important to you. | Le han demandado a usted en la corte. Si usted quiere defenderse de estas demandas expuestas en las paginas siguientes, usted tiene veinte (20) dias de plazo al partir de la fecha de la demanda y la notificacion. Hace falta ascentar una comparencia escrita o en persona o con un abogado y entregar a la corte en forma escrita sus defensas o sus objeciones a las demandas en contra de su persona. Sea avisado que si usted no se defiende, la corte tomara medidas y puede continuar la demanda en contra suya sin previo aviso o notificacion. Ademas, la corte puede decidir a favor del demandante y requiere que usted cumpla con todas las provisiones de esta demanda. Usted puede perder dinero o sus propiedades u otros derechos importantes para usted. |
| *You should take this paper to your lawyer at once. If you do not have a lawyer or cannot afford one, go to or telephone the office set forth below to find out where you can get legal help.* | *Lleve esta demanda a un abogado inmediatamente. Si no tiene abogado o si no tiene el dinero suficiente de pagar tal servicio. Vaya en persona o llame por telefono a la oficina cuya direccion se encuentra escrita abajo para averiguar donde se puede conseguir asistencia legal.* |
| Philadelphia Bar Association<br>Lawyer Referral<br>and Information Service<br>One Reading Center<br>Philadelphia, Pennsylvania 19107<br>(215) 238-6333<br>TTY (215) 451-6197 | Asociacion De Licenciados<br>De Filadelfia<br>Servicio De Referencia E<br>Informacion Legal<br>One Reading Center<br>Filadelfia, Pennsylvania 19107<br>(215) 238-6333<br>TTY (215) 451-6197 |

10-284

# IN THE COURT OF PHILADELPHIA COMMON PLEAS-CIVIL

DAVID HATCHIGIAN,                                     JULY TERM 2015

            Plaintiff,                                NO. 150604314

vs.

CARRIER CORPORATION AND

PEIRCE-PHELPS,

            Defendants.

## COMPLAINT

    Plaintiff DAVID HATCHIGIAN, files this complaint against the Defendants, CARRIER CORPORATION and PEIRCE-PHELPS ("Defendants"), seeking damages, attorney's fees and exemplary damages, against the Defendants, for Breach of Contract (Count I); Negligent Design (Count II); Breach of Implied Warranty of Fitness for a Particular Purpose (Count III); Violation of the Magnuson-Moss Warranty Act (Count IV); Breach of Warranty and Violations of Article 2 of the Uniform Commercial Code (Count V), and in support thereof respectfully alleges as follows:

## PARTIES

1

1. Plaintiff David Hatchigian (hereinafter, "Plaintiff") resides in Havertown Township, Delaware County, Pennsylvania, United States.

2. Defendant Peirce-Phelps (hereinafter, "Peirce-Phelps) is a Delaware corporation engaged in the distribution of air conditioning and heating systems. (Plaintiff reserves his right to update the caption with the correct entity information.)

3. Defendant Carrier (hereinafter, "Carrier") is a Delaware corporation licensed to do business in Pennsylvania and engaged in the designing, engineering, and installation of air-conditioning and temperature-control systems and one of the fifty largest HVAC distributors in the country. Its parent corporation, UTC Building & Industrial Systems, a unit of United Technologies Corp., is the world's largest high-technology building systems provider and a leading supplier to the aerospace and building systems industries worldwide. (Plaintiff reserves his right to update the caption with the correct entity information.)

## FACT ALLEGATIONS

4. Plaintiff, a citizen and resident of Pennsylvania, purchased a Carrier rooftop condensing unit air conditioner Model number # 50GL, Serial # 3805G41639 ("roof top unit") from Peirce-Phelps in 2005. Defendant Peirce-Phelps is a wholesale vendor of Carrier air conditioning systems in commercial, industrial, public, and residential buildings and sells Carrier products. The roof top unit was purchased by exclusively for use at the apartment building @ 7512 Brentwood Road, Philadelphia, PA 19151 ("Property"). Plaintiff was owner-lessor as of the Property, which was leased to tenants at the time the roof top unit was installed.

5. Defendant Carrier is the designer, manufacturer, marketer and seller of the roof top unit sold to Plaintiff.

2

6. Plaintiff was not provided with a copy of Carrier's warranties prior to or at the time of the sale of the roof top unit.

7. Defendant Carrier later provided a warranty document indicating that the roof top unit came with five, ten and fifteen -year warranties from the original installation date. (See Ex.15-16, Carrier Customer Relations Request response email with attachment, dated March 11, 2015 to Plaintiff.)

8. The roof top unit was verbally warranted to be in good working condition and waterproof at the time of installation and contained drainage components intended to remove liquid condensate and prevent condensate build-up. (See Ex. 28-53)

9. Prior to contacting Carrier, Plaintiff regularly replaced the filters at least twice annually and kept the indoor coils and blower wheels clean.

10. Operational checks on the roof top unit including checks for thermostat cooling set points were performed at least twice annually, in 2008, 2011, 2013.

11. In one such property inspection in 2013, Plaintiff discovered the unit had stopped properly functioning and triggered extensive mold damage throughout the property.

12. As there was no mold anywhere at the property prior to 2013, Plaintiff immediately contacted Defendant Carrier-Peirce Phillips and authorized entry onto his property by their representative, Joseph Vagnozzi. See Ex. 25

13. Joseph Vagnozzi was not the individual who conducted the 2005 sale.

14. He personally visited the site on September 26, 2013. See Ex. 25

3

15. He visited the site again on February 27, 2015 and later confirmed the condition of the leaking unit. See Ex. 11

16. After completing an inspection of the entire air conditioner as installed and sealing the sheet metal screws in the unit's housing, Mr. Vagnozzi verbally represented that the unit was properly installed at a level pitch and warranted to Plaintiff that the unit would not cause further roof leaks. See Ex. 55-57

17. Vagnozzi did not flood the roof surrounding the unit, spray the exposed surfaces or make any adjustments to minimize condensate accumulation during his visits to the site to inspect the unit.

18. Shortly thereafter, the unit commenced leaking again, causing further mold damage to the property. See Ex.58-90

19. Due to the mold problem, all of Plaintiff's tenants were unable to continue occupying the apartment safely and were compelled to vacate due to mold-related health issues in June of 2015, causing an immediate loss of rents to Plaintiff as Plaintiff could not afford to rectify the air conditioning malfunction.

20. There was no mold prior to installation. 100% of the mold that ultimately had to be removed from 7512 Brentwood Road was attributable to the malfunctioning of Defendants' roof top unit. Plaintiff sent the bill to the manufacturer in order to recover the replacement cost, in response to which Carrier's agent refused and - notwithstanding the unit had been designed for roof installation – denied guarantying that the unit was waterproof. See Ex. 5

4

21. To date, Joseph Vagnozzio at Peirce Phillips and Elite Water Damage Restoration, Inc. ("EWDR") have each independently verified that water is entering Plaintiff's building through the roof top unit. See Ex. 55-90

22. Additionally, EWDR has confirmed that until the unit is replaced in building it will continue to make mold rendering the dwelling unfit for human habitation.

23. Neither of the two apartments is rentable at the present time, directly due to the property damage and mold contamination that were the consequence of installing Defendants' unit. (See Ex. 55-90.)

24. To date, Plaintiff has paid $2,000 on account of the contract price. See .Ex. 58, 91-95 attached to this complaint. An additional $15,000 is due for materials and labor and $10,000 for loss of profit. See .Ex. 5. The estimated out of pocket cost of labor and materials, other costs expended to rectify the air conditioning unit plus lost profit total over $25,000. See Ex, 61 (Plaintiff's Statement of Claim to insurer). Additionally, Plaintiff can show at trial that labor and materials furnished in the additional amount of $25,000 leaving a balance owing of $25,000 with no credits to date paid by either Defendant. Peirce-Phelps has refused to reimburse any of these expenses to address the property damage and lost rents due to the malfunctioning unit.

25. Defendants cannot lawfully rely on warranty terms purporting to exclude liability for damages such as replacement labor costs.

26. In their dealings with the Plaintiff, Defendants have violated the federal Magnuson-Moss Warranty Act and state consumer protection law, and Plaintiff owner brings this claim in order to vindicate his own rights and those of owners and consumers nationwide.

5

Case ID: 150604314

## COUNT I

## BREACH OF CONTRACT

### (Against Defendant Peirce-Phelps)

27. The allegations of the above paragraphs are incorporated herein as if re-alleged in full.

28. In January 2005, the Defendants entered into a contract with Plaintiff to sell a rooftop air conditioning unit (Carrier, MODEL #50GL, SERIAL #H3805641639), including, but not limited to inspecting, servicing, maintaining and cleaning of the unit after the sale. A copy of the essential terms breached by defendants are attached to this Complaint. (See Ex,3,4,5,6,12,13)

29. In exchange for the purchase price of $1,428.00 paid by Plaintiff, Defendants promised delivery of a working roof top unit in good working condition.

30. Subsequently, distributor Peirce Phelps warranted post-sale repair services to address unit leaks.

31. Defendant Peirce Phelps' post-installation warranty service work was not effective to stop the leaks and consequential property damage.

32. The defective roof top unit has caused the ceiling at the Property to collapse from unit leakage, creating mold to form along the roof paneling to contaminate the residential living space below. (See Ex.'58-90).

33. There also an implied warranty that the system would perform all of the basic functions it purported to provide, which was breached once the system did not work properly.

6

34. Defendant's violation of the agreement to repair or replace the unit to conform to Defendant's marketing specifications resulted in extensive property damage and exposed Plaintiff's tenants to physical injury in the form of conditions including a range of lung disorders, asthma, and infections of the lung, entitling Plaintiff Hatchigian to economic losses.

35. Additionally, Plaintiff seeks damages for property damage not merely purely economic loss from the defendants' breach of contract.

**COUNT II**

**NEGLIGENT DESIGN**

**(Against Defendant Carrier)**

36. The allegations of the above paragraphs are incorporated herein as if re-alleged in full.

37. The roof top unit was defective in design in that the foreseeable risks could have been reduced or avoided by the use of a reasonable alternative design. The failure to utilize such a design caused the product to be unreasonably hazardous, causing mold to form on large surfaces of the property.

38. The damage to Plaintiff's property resulting from condensate leaks generated by Carrier's unit was foreseeable.

39. Carrier's design of the roof top unit caused condensate discharged onto Plaintiff's apartment's ceilings.  Upon sale, neither Carrier nor its distributor Peirce-Phelps represented that the roof top unit would stop functioning in the presence of precipitation, rainfall or snowfall.

7

40. Manufacturers must provide electrical knockouts for power and control wiring in an area of the unit that is protected from rain exposure. The outdoor portion of the roof top unit are not compatible with standard electrical wiring systems in that rainwater escaped into the space below the unit in large quantities to cause significant damage the property.

41. Defendant Carrier did not disclose that an excess of water entering its roof top unit by way of wind driven rain would be driven into the unit by the unit's blower, causing wet insulation within the unit and severe damage to the space below the roof.

42. The roof top unit could have been designed with drainage components and mechanisms to control carryover moisture, coil icing, variable refrigerant pressure and/or reduced coil load in conformity with the prevailing acceptable standards in the air conditioning industry.

43. Carrier's designers would have been aware that rainfall can trigger periods of 100% outdoor humidity and that, the higher the outdoor humidity, the larger the condensate volume the unit will pull from the air and the higher the condensate load on the unit.

44. A national manufacturer of temperature control systems would also have been aware and foreseen that condensate leaks can often occur during periods of extremely high humidity.

45. Carrier's designers failed to modulate unit air flow and were aware that their defective design risked mold damage from water condensation and resulting leakage.

46. The manufacturer's specified air flow volume were exceeded for the existing coil.

47. Alternative feasible designs existed that would not have caused property damage and personal injuries.

8

48. Defendants acted negligently in otherwise failing to use due care and skill under the circumstances in ways which may be further disclosed during the course of discovery.

49. Defendants' negligence exposed Plaintiff's tenants to physical injury in the form of conditions including a range of lung disorders, lung infection, asthma and related conditions, entitling Plaintiff Hatchigian to economic losses.

50. As a result of Defendants' negligence, Plaintiff has incurred extensive property damage.

## COUNT III
## BREACH OF IMPLIED WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE
### (Against All Defendants)

51. The allegations of the above paragraphs are incorporated herein as if re-alleged in full.

52. Defendants knew, or reasonably should have known that its roof top unit would be principally utilized for air conditioning.

53. Defendant Peirce-Phelps failed to make certain that drainage lines had the appropriate pitch.

54. Defendant Carrier was aware that carry-over moisture could occur at air velocities lower/higher than the threshold set by the manufacturer.

55. Defendant Carrier was aware that roof top units must operate below their maximum rated airflow and that defective equipment could impede the flow of condensate.

9

56. Defendants acted negligently in otherwise failing to use due care and skill under the circumstances in ways which may be further disclosed during the course of discovery.

57. Defendants' negligence in designing and servicing the unit has resulted in extensive property damage and exposed tenants to physical injury in the form of conditions including infections of the lung, asthma and other preventable medical conditions entitling Plaintiff Hatchigian to economic losses.

58. Defendants knew, or reasonably should have known, Hatchigian would not be the first or only user-purchaser to use the roof top unit as an air conditioner under conditions of rainfall, one of the purposes for which it was sold to consumers.

59. Plaintiff at all times utilized the unit for the primary function it was advertised to perform.

60. Defendants warranted the unit's fitness for the purpose for which it was sold and reasonable workmanship.

61. Defendants impliedly warranted that the roof top unit was fit for the purpose for which it was sold to Plaintiff and was not negligently marketed, negligently constructed or negligently designed.

62. Defendants impliedly warranted their roof top unit would not be defective so as to leak to the extent surrounding roofing material would be caused to collapse, rot and contaminate living spaces of the property.

63. The warranty of fitness of the product for use as an air conditioner was implied in law and existed independent of any representations by the Defendants or Defendants' agents.

10

64. Defendants impliedly warranted proper installation would not cause property damage and cause physical injuries to Plaintiff's tenants.

65. Such warranties arose by operation of law, independent of any contractual representations.

66. Any implied warranties extended to Plaintiff and Plaintiff's tenants.

## COUNT IV

## VIOLATION OF MAGNUSON-MOSS WARRANTY ACT

### (Against All Defendants)

67. The allegations of the above paragraphs are incorporated herein as if re-alleged in full.

68. The federal Magnuson-Moss Warranty Act ("Magnuson-Moss"), 15 U.S.C. §§ 2301-2312, is a consumer protection regime designed to supplement state warranty law.

69. Magnuson-Moss provides a cause of action for breach of warranty. 15 U.S.C. § 2310(d)(1).

70. Defendants breached their warranty to provide goods that are free from defects, and Plaintiff suffered and continues to suffer damages as a result of Defendants' breach.

71. Defendants' written warranties contain terms purportedly limiting Defendants' liability relative to defective products to replacement of the product or refund for the purchase price of the product, at Defendants' option. These terms appear in the same font as the rest of the terms of the warranty, they are not bolded, and they are not printed in a contrasting color. In

11

short, they are inconspicuous, and that lack of conspicuousness violates Magnuson-Moss. 15 U.S.C. § 2302(a); 15 U.S.C. § 2304(a)(3). (See Extended Protection Limited Warranty, Ex. 16 )

72. In addition, Defendants' written warranties purport explicitly to exclude liability for consequential and incidental damages, including for the costs of shipping and labor. Where these terms purport to exclude liability for consequential damages, they fail to meet "the Federal minimum standards for warranty, and, accordingly, they are not enforceable. See 15 U.S.C. § 2304(a)(3). (See Extended Protection Limited Warranty, Ex. 16 )

73. To the extent Defendants' written warranties purport to disclaim the implied warranties of merchantability and fitness for a particular purpose, these disclaimers are ineffective pursuant to 15 U.S.C. § 2308(a) and (c). (See Extended Protection Limited Warranty, Ex. 16 )

74. To the extent the above warranty terms effectively purport to exclude liability for consequential damages, they fail to meet "the Federal minimum standards for warranty, and, accordingly, they are not enforceable. See 15 U.S.C. § 2304(a)(3).

75. In addition, Plaintiff does not recall receiving a written warranty document before, at, or around the time that the product was purchased. Plaintiff also does not recall having seen any copies of the warranty documents displayed at the wholesale warehouse where the produce was purchased.

76. Upon information and belief, at the time the purported warranties were issued, Defendants knew that they had not corrected the manufacturing processes that led to litigation with respect to the defective roof top unit, therefore their disclaimers are unconscionable because they disclaimed a defect known but not disclosed.

12

77. Defendants' acts and omissions in violation of Magnuson-Moss are "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce," and, accordingly, they are unlawful. 15 U.S.C. § 2310(b); 15 U.S.C. § 45(a)(1).

78. Plaintiff has suffered damages and will continue to suffer damages as a result of Defendants' breach of warranty and its failures to comply with its lawful obligations under its written and implied warranties, in particular by way of their refusal to pay for labor costs associated with removal of the defective roof top unit and re-installation of a replacement unit and any supplies and materials needed to remove the defective roof top unit and to reinstall the replacement unit. Plaintiff has also suffered recoverable damages where, in purported reliance on exclusionary language in its written warranty documents, Defendants have refused to pay shipping charges for a replacement product.

79. Magnuson-Moss provides for "other legal and equitable relief where there has been a breach of warranty or failure to abide by the obligations that Magnuson-Moss imposes (15 U.S.C. § 2310(d)(1)) therefore Plaintiff seeks reformation of Defendants' warranty documents to comport with Defendants' obligations under Magnuson-Moss.

80. Plaintiff asks respectfully that the Defendants Carrier Corporation and Peirce-Phelps be enjoined from acting unlawfully to discourage consumers from seeking the full panoply of state and federal remedies available to them.

81. Magnuson-Moss also provides for an award of costs and expenses, including attorneys' fees, to prevailing consumers in connection with the commencement and prosecution of lawsuits thereunder, unless the Court in its discretion determines that such an award would be

13

inappropriate. 15 U.S.C. § 2310(d)(2). Plaintiff may request an award pursuant to this provision as a prevailing consumer at the conclusion of this lawsuit.

## COUNT V

### BREACH OF WARRANTY AND VIOLATIONS OF ART. 2 OF THE UNIFORM COMMERCIAL CODE

82. The allegations of the above paragraphs are incorporated herein as if re-alleged in full.

83. The Uniform Commercial Code ("U.C.C."), including Article 2 on Sales, was meant to harmonize the law governing commercial transactions across the United States. Pennsylvania has adopted the U.C.C., including Article 2.

84. Where adopted, Article 2 governs transactions in goods and warranty rights and obligations.

85. Defendants extend a written warranty directly to consumers and warrant that for a period of years their product shall be free from material defects in workmanship and materials. (See Extended Protection Limited Warranty, Ex. 16)

86. At the time Defendants' purported warranties issued, Defendants knew that they had not corrected the manufacturing processes that led to litigation with respect to the defective roof top unit, therefore their disclaimers are unconscionable because they disclaimed a defect known but not disclosed.

87. In the written warranty belatedly supplied to Plaintiff after Plaintiff advised of the defects in their roof top unit and the property damages caused by the unit, Defendant Carrier

14

generically, specifically and impliedly purports to exclude liability for consequential and incidental damages. (See Extended Protection Limited Warranty, Ex. 16)

88. These purported exclusions or limitations of liability were at no point negotiated between Carrier, a global corporation with enormous bargaining power, and the plaintiff consumer.

89. Plaintiff never even given the benefit of seeing the purported exclusions and limitations (conspicuous in the warranty or not) until after the mold damage to his income property was triggered and after he sought redress relative to the defective product he purchased.

90. Under these circumstances, the purported exclusions or limitations of liability are unconscionable and invalid.

91. To make matters worse, the defects in the roof top unit sold to Plaintiff were latent and non discoverable by reasonable inspection at the time plaintiffs purchased the goods.

92. As the Defendants must have been well aware, standard roof top units are intended to be installed in areas of structures exposed to the elements. When these roof top units fail, any product meant to replace the defective unit must be transported to the structure and labor is typically necessary to remove the defective roof top unit, to dispose of it, and to replace it with the replacement unit.

93. Under these circumstances, a purported limitation or exclusion of the partial but necessary remedies of payment or reimbursement for shipping charges and the cost of removal and replacement labor causes the purportedly limited remedy set forth in Carrier's warranty document to fail of its essential purpose. (See Extended Protection Limited Warranty, Ex. 16)

Case ID: 150604314

d) Having stated the foregoing allegations and claims, Plaintiff additionally prays that this court issue an Order directing that:

i. that the subject warranty documents be reformed as necessary, and that certain provisions therein be disregarded as invalid or unenforceable, to permit Plaintiff the full panoply of remedies available for breach of warranty, express and implied, under Article 2 of the Uniform Commercial Code (or the applicable provisions of the Pennsylvania Code, as the court deems appropriate, or otherwise;

ii. that Plaintiff be immediately afforded all remedies available at law or equity, including but not limited to, awards of damages, restitution, or disgorgement under the consumer protection laws of Pennsylvania, as applicable, in such amounts to be determined at trial, with trebling or other multiplying where permitted by law;

iii. that Plaintiff be granted an award of punitive damages as available at law or equity, and in an amount to be determined at trial;

iv. that Defendant Carrier be enjoined from continuing the illegal activities alleged herein;

v. that Plaintiff recover their costs of suit, including reasonable attorneys' fees and expenses as provided by law

5. Such other and further relief as this Court may deem appropriate.

**Respectfully submitted,**

Dated: September 20, 2015

*David Hutchison*

**JURY DEMAND**

Plaintiff respectfully requests a trial by jury on all issues.

18

Dated: September 20, 2015

Respectfully submitted,

*David Hatcher*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing instrument has been served upon the Attorney of Record of all parties to the above captioned case in accordance with Pennsylvania Rules of Civil Procedure on this 21 day of September , 2015 by the following:

e-file

3817 certificate of mailing

*David Hatcher*

19

## CERTIFICATE OF SERVICE

I, _DAVID HATCHIGIAN_ , hereby certify that a true and correct copy of the foregoing motion/petition and accompanying papers, was served on the below listed addresses by first-class United States mail, postage pre-paid, on _SEPTEMBER 21_ (date). _2018_

Name: _CARRIER CORPORATION_
Address: _P.O. BOX 4808 CARRIER PARKWAY_
Address: _SYRACUSE, NY 13221_
City, State, Zip: _____

Name: _PEIRCE PHELPS_
Address: _JOSEPH P. VAGNOZZI_
Address: _516 EAST TOWNSHIP LINE ROAD_
City, State, Zip: _BLUE BELL PA A427_

Dated: _September 20, 2018_    By: _David Hatchigian_

# Exhibit "C"

1

Case ID: 150604314
Control No.: 17030827

1    IN THE COURT OF COMMON PLEAS
     FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
2          CIVIL TRIAL DIVISION

3              - - -

4
DAVID HATCHIGIAN              :
5                            :
      -vs-                    :
6                            :
CARRIER CORPORATION          :   No.  150604314
7      and                   :
                             :
8  PEIRCE-PHELPS             :

9              - - -
            MOTION
10             - - -

11

12          CITY HALL
         Courtroom 682
13     Philadelphia, Pennsylvania

14

15       **January 23, 2017**

16

17              - - -
   **BEFORE:**  **THE HONORABLE** GENE COHEN, J.
18              - - -

19

20

21

22       Sherri Benson, RPR
     OFFICIAL COURT REPORTER
23       Land Title Building
     100 S. Broad Street, 2nd Floor
24   Philadelphia, PA  19110 (215) 683-8067

25

2

1    A P P E A R A N C E S:

2

3

4    WILLIAM HOBSON, ESQ.
     For the Plaintiff
5
     KIM WOODIE, ESQ.
6    For the Defendant — Carrier Corporation

7    JAMES F. RYAN, ESQ.
     For the Defendant Peirce-Phelps
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

3

1     MR. HOBSON:  We have a settlement,

2     Your Honor.  We're willing to accept the

3     sum of $3,000.  In exchange for that,

4     we're going to drop and dismiss all

5     claims.  There will be no follow-up claims

6     of any kind, any appeals against Carrier

7     or Peirce-Phelps.

8     MS. WOODIE:  Your Honor, there's

9     another term we wanted to include in the

10    release language which mirrors the

11    installation instructions.  He is not a

12    qualified mechanical contractor to install

13    HVAC equipment.

14    THE COURT:  Why is that necessary?

15    MS. WOODIE:  Because, Your Honor,

16    he's represented he's a mechanical

17    contractor in order to purchase this unit

18    from the distributor, and he's not.

19    MR. HOBSON:  I don't envision my

20    client is going to be going around

21    representing himself as a certified

22    Carrier instructor.  I'll make him aware

23    of that.  I don't want any language in

24    there that insults his integrity because

25    he is a certified electrician.

4

1            MS. WOODIE: Different trade.

2            MR. HOBSON: I agree. Put the

3  language in there.

4            THE COURT: You'll prepare the

5  release then without being too insulting.

6            MS. WOODIE: Yes, Your Honor.

7            THE COURT: So they don't come

8  back here because the release is

9  insulting.

10          DAVID HATCHIGIAN, after having

11  first been duly sworn, was examined and

12  testified as follows:

13          THE COURT: Mr. Hatchigian, you

14  heard the settlement as read into the

15  record as stated in the record by your

16  attorney and as reflected by the defense

17  attorney? You heard that?

18          MR. HATCHIGIAN: Yes.

19          THE COURT: And you accept that?

20          MR. HATCHIGIAN: Yes.

21          THE COURT: Okay. Mark this

22  matter as settled.

23

24

25

5

```
 1                      CERTIFICATE

 2

 3              I, SHERRI BENSON, Registered

 4   Professional Reporter and Certified Shorthand

 5   Reporter in and for the Commonwealth of

 6   Pennsylvania, do hereby certify that the foregoing

 7   is a true and accurate transcript of the notes of

 8   testimony of said witness who was first duly sworn

 9   on the date and place hereinbefore set forth.

10

11              I FURTHER CERTIFY that I am neither

12   attorney nor counsel for, nor related to or employed

13   by any of the parties to the action in which this

14   trial was taken, and further, that I am not a

15   relative or employee of any attorney or counsel

16   employed in this action, nor am I financially

17   interested in this case.

18

19

20

21   _____

22   SHERRI BENSON, REGISTERED PROFESSIONAL REPORTER

23

24

25
```

*Exhibit "D"*

Court of Common Pleas of Philadelphia County
Trial Division - Civil
**TRIAL WORK SHEET**

Judge's Name:         Judge's I.D.:         Signature:

**GENE D COHEN**         J345

Caption:         Case Type:         Program:

**HATCHIGIAN VS CARRIER CORP. ETAL**         CONTRACTS (GOODS),   ARBITRATION APPEAL
ENFORCE

Court Term and Number:     If Consolidated, Court Term and Number:

**#1506-04314**

| Trial Date: | | Total Amount: | Number of Days: | Disposition Date: | Date Sheet Prepared: |
|---|---|---|---|---|---|
| 23-JAN-2017 | Jury X. Non-Jury | | | 23-JAN-2017 | 23-JAN-2017 |

Full Description of Disposition (to be entered Verbatim on the Docket)

Settled after assignment for trial. Settlement placed on record.

Default Judgment/Court Ordered
Directed Verdict
Discontinuance Ordered
Transferred to binding arbitration
Finding for Defendant (Non-Jury)
Finding for Plaintiff (Non-Jury)
Damages Assessed
Judgment entered by agreement
Judgment entered
Judgment satisfied

Jury Verdict for Plaintiff
Jury Verdict for Defendant
Mistrial
Hung Jury
Non-Pros entered
Non-Suit entered
Settled prior to assignment for trial (Team Leaders, only)
x Settled after assignment for trial
     prior to jury selection
     after jury sworn

Other (explain)

Hatchigian Vs Carrier C-WSATJ



15060431400081

**DOCKETED
COMPLEX LIT CENTER**

JAN 2 4 2017

**J. STEWART**

Plaintiff's Counsel (name, address & telephone)     Defendant's Counsel (name, address & telephone)

**JAMES F. RYAN
PHONE #(610)971-9200
FAX #(610)971-2491**

"*Exhibit E*"

**FILED**

05 MAR 2017 09:21 pm

**Civil Administration**

E. MASCUILLI

| | | |
|---|---|---|
| DAVID HATCHIGAN, | : | IN THE COURT OF COMMON PLEAS |
| | | PHILADELPHIA, PENNSYLVANIA |
| Plaintiff, | : | |
| v. | | CIVIL ACTION- LAW |
| | : | JULY TERM- 2015 |
| CARRIER CORPORATION, and | | |
| PEIRCE-PHELPS, | : | NO. 150604314 |
| Defendants, | | |

## ORDER

AND NOW ,this _____day of _____,2017 upon consideration of the Motion to INVALIDATE SETTLEMENT and any response thereto, it is Ordered and Decreed that Motion is GRANTED

BY THE COURT

_____

<u>J</u>

DAVID HATCHIGAN,                    :        IN THE COURT OF COMMON PLEAS

                                             PHILADELPHIA, PENNSYLVANIA

       **Plaintiff,**                 :

v.                                           **CIVIL ACTION- LAW**

                                    :        **JULY TERM- 2015**

CARRIER CORPORATION, and

PEIRCE-PHELPS,                      :        NO. 150604314

      **Defendants,**

## PLAINTIFF'S MOTION TO INVALIDATE SETTLEMENT and MEMORANDUM of Law

### PURSUANT TO PA RCP NO. 229.1

1.      Pa.R.C.P. No. 229.1, relating to settlement funds, provides in part:

(c) If a plaintiff and a defendant have entered into an agreement of settlement, the defendant shall deliver the settlement funds to the attorney for the plaintiff, or to the plaintiff if unrepresented, within twenty calendar days from receipt of an executed release. Upon receipt of the settlement funds, the plaintiff shall file a discontinuance or deliver a discontinuance to the defendant.

(d) If settlement funds are not delivered to the plaintiff within the time required by subdivision (c), the plaintiff may seek to

(1) invalidate the agreement of settlement as permitted by law, or

(2) impose sanctions on the defendant as provided in subdivision (e) of this rule.

- Pa.R.C.P. No. 229.1(c), (d) (emphasis added)

2.      Rule 229.1, whose "purpose is to protect parties from reneging on an agreement[,]" Wright v. Lexington & Conrad Search and Abstract LLC, 26 A.3d 1134 (Pa. Super. 2011), provides that within twenty calendar days of entering into a release, the defendant must deliver the agreed upon settlement funds to the plaintiff.

3.      The defendant's failure to do so triggers the plaintiff's right under Rule 229.1 to seek either of two remedies. The plaintiff may seek to invalidate the settlement agreement, the effect of which would be to resume the civil action, or the plaintiff may seek sanctions against the defendant.

4.      Moreover, Rule 229.1 confers authority on trial courts to, among other things, enforce settlement agreements so long as the underlying cause of action has not been discontinued.

5.      Instantly, the parties have not modified the twenty-one day period by agreement;

6.      Jurisdiction remains with this court under Rule 229.1 to invalidate the settlement as the underlying action has not been terminated by Plaintiff. See Pa.R.C.P. No. 229.1 note ("Upon receipt of the settlement funds, the plaintiff shall file a discontinuance or deliver a discontinuance to the defendant.").

7.      Wherefore, based on the foregoing, this Motion to Invalidate Settlement should be granted and an Order issued reviving the Civil Action Index No. 150604314.

Respectfully submitted,

March 7, 2017

Case ID: 150604314
Control No.: 17030827

# CERTIFICATE OF SERVICE

I, David Hatchigian , hereby certify that a true and correct copy of the

foregoing  Plaintiff Motion to Invalidate Settlement and Memorandum of

Law was served on the below listed address by First -Class United States

Mail 3817 on March 7, 2017

Marshall Dennehey Warner Coleman & Goggin
Mrs. Woodie Esquire
620 Freedom Business Center, Suite 300
King of Prussia, Pa. 19406
610-354-8250

James F. Rayan Esquire
995 Old Eagle School Road
Suite 306,
Wayne Pa. 19087

Case ID: 150604314
Control No.: 17030827

"*Exhibit F*"

IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY
FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
CIVIL TRIAL DIVISION

DOCKETED
COMPLEX LIT CENTER

APR 1 8 2017

**J. STEWART**

| | | |
|---|---|---|
| DAVID HATCHIGIAN | : | |
| *Plaintiff* | : | JUNE TERM, 2015 |
| | : | |
| vs. | : | |
| | : | No. 4314 |
| CARRIER CORPORATION | : | |
| | : | |
| PEIRCE-PHELPS, INC. | : | Control No.: 17030827 |
| *Defendants* | : | |
| | : | |

## ORDER

**AND NOW** this 18th day of April, 2017, upon consideration of Plaintiff David

Hatchigian's Motion to Invalidate Settlement, and Defendants' responses thereto, and after

hearing argument thereon, it is hereby **ORDERED** and **DECREED** that said motion is

**DENIED.**[1]

**BY THE COURT:**

April 18, 2017

Gene D. Cohen                          J.

Hatchigian Vs Carrier C-ORDER

15060431400091

---

[1] Plaintiff was represented by counsel at the original settlement. The Court finds Plaintiff's pro
se conduct unreasonable in failing to sign an appropriate and necessary release in order to secure
the funds from Defendants' insurance company.

Exhibit "G"

DAVID HATCHIGIAN,

v.

CARRIER CORPORATION, and
PEIRCE-PHELPS,

COURT OF COMMON PLEAS

PHILADELPHIA COUNTY

CIVIL TRIAL DIVISION

No. 4314

## CONCISE STATEMENT OF ERRORS COMPLAINED OF ON APPEAL

Appellant DAVID HATCHIGIAN responds timely to the Order of May 8, 2017, issued
by the Honorable Gene D. Cohen to file of record a Concise Statement of Errors Complained of
on Appeal pursuant to Pa. R.A.P. 1925(b) as follows:

### ISSUES FOR APPEAL

1)    Whether the court should have granted the Motion to Invalidate (Order dated
April 18, 2017) and restored this case to the trial calendar where counsel at the original
settlement was not counsel of record, entered no appearance and had no apparent settlement
authority.

2)    Whether the denial of a jury trial was an abuse of discretion under *Wertz v.
Chapman Township*, 559 Pa. 630 (1999), where Jury Trial Fees were paid and Plaintiff's motion
for a jury trial of July 26, 2016 was unopposed.

Plaintiff-Appellant further reserves the right to supplement and/or amend his Concise Statement,
*Tucker v. R.M. Tours*, 977 A.2d 1170 (Pa., 2009) (Clarification of a non-concise statement is a
salutary practice, designed to effectuate appropriate appellate review.)

Respectfully submitted,

**DAVID HATCHIGIAN**

**Plaintiff-Appellant, Pro Se**

2

# CERTIFICATE OF SERVICE

I, David Hatchigian , hereby certify that a true and correct copy of the

foregoing  Concise Statement of Matters Complained of  and was served on

the below listed address by First -Class United States Mail 3817 on May 31,

2017

Marshall Dennehey Warner Coleman & Goggin
Mrs. Woodie Esquire
620 Freedom Business Center, Suite 300
King of Prussia, Pa. 19406
610-354-8250

James F. Rayan Esquire
995 Old Eagle School Road
Suite 306,
Wayne Pa. 19087

Judge Gene Cohen
Court Room 143 G
City Hall Pa. 19107

*David Hatchigian*

*May 31 2017*

FAX (610) 527-7516

(610) 446-7257 ANS MACHINE

## DAVID HATCHIGIAN
*2414 Township Line Road*
*Havertown, PA 19083-5236*
david3091@outlook.com

May 31, 2017

Marshall Dennehey Warner Coleman & Goggin
620 Freedom Business Center, Suite 300
King of Prussia, Pa. 19406
610-354 8250

RE: David Hatchigian vs. Carrier Corporation and Peirce-Phelps P.C.P. NO.
150604314

Dear Judge Gene Cohen, Ms. Woodie and Mr. Ryan

Please find Plaintiff Concise Statement of Matters Complained of on Appeal.

Any questions please call or e/m.

Respectfully,

*David Hatchigian*

David Hatchigian

Enclosures (5)

CC: James F. Ryan Esquire 995 Old Eagle School Road Suite 306 Wayne Pa. 19087
Judge Gene D. Cohen Court Room 143 G City Hall Pa. 19107

| David Hatchigian, | : | **COURT OF COMMON PLEAS** |
| Plaintiff | : | |
| | : | **PHILADELPHIA COUNTY** |
| | : | |
| vs. | : | |
| | : | **June Term, 2015** |
| Carrier Corporation, | : | |
| Peirce-Phelps, Inc. | : | No. ~~01314~~ 4314 |
| Defendants | : | |
| | : | |

## ORDER PURSUANT TO P.A. R.A.P. 1925(b)

**AND NOW,** this 8th day of May, 2017, pursuant to Rule 1925(b) of the Pennsylvania

Rules of Appellate Procedure, the Court hereby **ORDERS** and **DIRECTS** the Appellant, David

Hatchigian, to file of record in this Court, and to serve a copy upon the undersigned judge, a

concise statement of the errors complained of on appeal. The Appellant shall file and serve this

statement pursuant to PA.R.A.P. 1925(b)(1), no later than twenty-one (21) days from entry of

this order on the docket. The Appellant is cautioned that any issue not properly included in the

statement timely filed and served pursuant to PA.R.A.P. 1925(b) shall be deemed waived.

BY THE COURT:

_____
Gene D. Cohen                    J.

May 8, 2017

Hatchigian Vs Carrier Corp. Etal-ORDER

**DOCKETED**
**COMPLEX LIT CENTER**

MAY 1 1 2017

**J. STEWART**

15060431400094

Case ID: 150604314

"*Exhibit H*"

# IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY
## FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
### CIVIL TRIAL DIVISION

| | | |
|---|---|---|
| **DAVID HATCHIGIAN** | : | |
| *Plaintiff* | : | |
| | : | **JUNE TERM, 2015** |
| | : | |
| **vs.** | : | |
| | : | **No. 4314** |
| | : | |
| **CARRIER CORPORATION** | : | **1514 EDA 2017** |
| | : | |
| **PEIRCE-PHELPS, INC.** | : | |
| *Defendants* | : | |
| | : | |

## OPINION

This opinion is issued pursuant to an appeal of the Court's order denying Plaintiff David Hatchigian's Motion to Invalidate Settlement in the above-captioned breach of contract action.

Plaintiff filed his *pro-se* complaint on September 20, 2015, alleging various counts against defendants Carrier Corporation and Peirce-Phelps, Inc., in connection with Plaintiff's purchase of an air conditioning unit. According to the complaint the Plaintiff, the owner-lessor of an apartment building, purchased an air conditioning system from Defendant Peirce-Phelps, Inc., a distributor of air conditioning units, for use in his apartment building. The unit was manufactured by Carrier Corporation. The air conditioner allegedly proved defective and caused mold to grow in the property, sickening Plaintiff's tenants and requiring them to evacuate the premises, thus leading to lost rental income for Plaintiff. Plaintiff alleged, *inter alia*, that Defendant Peirce-Phelps, Inc., violated its contract of sale by failing to deliver a working air conditioning system and by failing to repair it once notified of its defective condition. Plaintiff

Hatchigian Vs Carrier Corp. Etal-OPFLD



also sought to hold liable Defendant Carrier Corporation for negligence in its design of the system. Carrier Corporation and Peirce-Phelps filed their answers on October 20, 2015, and October 29, 2015, respectively. The matter proceeded to arbitration and on March 30, 2016, the arbitrators found in favor of Defendants. On April 25, 2016, Plaintiff appealed from the decision of the arbitrators. The matter was scheduled for trial on January 23, 2017. On the day of trial the Plaintiff, then represented by counsel, agreed to a settlement with Defendants, the terms of which were placed on the record. In pertinent part, Plaintiff was to receive $3,000.00 in exchange for an agreement to dismiss his claims against Defendants. Plaintiff David Hatchigian was sworn and stated on the record that he accepted the settlement as read. (N.T. 1/23/17 pgs. 3-4).

On March 5, 2017, the Plaintiff, now pro-se, filed a Motion to Invalidate Settlement, alleging that Defendants had wrongfully withheld the settlement funds. Defendants filed their respective Answers in opposition on March 16, 2017. On April 18, 2017, a hearing was held on Plaintiff's motion. The Court heard evidence that Plaintiff had refused to execute the release provided to him by defendants, and that settlement funds were withheld for this reason. On April 18, 2017, the Court denied Plaintiff's motion, writing in its order: "Plaintiff was represented by counsel at the original settlement. The Court finds Plaintiff's pro se conduct unreasonable in failing to sign an appropriate and necessary release in order to secure the funds from Defendants' insurance company."

On May 5, 2017, Plaintiff timely filed the instant appeal. On May 11, 2017, the Court issued an order pursuant to Pa.R.C.P. 1925(b), directing Plaintiff to file a concise statement of matters complained of on appeal within 21 days of the entry of the order on the docket. On May

31, 2017, Plaintiff timely filed his Statement of Errors.  Plaintiff states in his 1925(b) statement

that he intends to raise the following issues on appeal:

> "1) Whether the court should have granted the Motion to Invalidate (Order dated April 18, 2017) and restored this case to the trial calendar where counsel at the original settlement was not counsel of record, entered no appearance and had no apparent settlement authority."

> "2) Whether the denial of a jury trial was an abuse of discretion under *Wertz v. Chapman* Township, 559 Pa. 630 (1999), where Jury Trial Fees were paid and Plaintiff's motion for a jury trial of July 26, 2016 was unopposed."

The gravamen of Plaintiff's first complaint, then, is that the Court should have granted his

Motion to Invalidate Settlement.  This complaint is without merit.

The record shows that a settlement was agreed to by the parties on the day of trial and

Plaintiff himself testified that he approved the settlement. (N.T. 1/23/17 pgs. 3-4).  Plaintiff was

represented by counsel at this time.  Subsequently, Plaintiff refused to return the executed

release.  Pennsylvania Rules of Civil Procedure 229.1 provides in pertinent part:

> (c) If a plaintiff and a defendant have entered into an agreement of settlement, the defendant shall deliver the settlement funds to the attorney for the plaintiff, or to the plaintiff if unrepresented, within twenty calendar days from receipt of an executed release.

> (d) If settlement funds are not delivered to the plaintiff within the time required by subdivision (c), the plaintiff may seek to

> (1) invalidate the agreement of settlement as permitted by law…

Plaintiff in his Motion to Invalidate Settlement specifically invoked Pa.R.C.P. 229.1(d)(1) and

requested the Court invalidate the agreement reached with Defendants on the day of trial.

Plaintiff's complaint was and is invalid on its face – Plaintiff cannot invalidate the agreement on

the basis that Defendants had failed to comply with Pa.R.C.P. 229.1(c) by failing to deliver the

settlement funds to him within 20 days of the receipt of an executed release when Plaintiff

himself failed to deliver the executed release.  In a subsequent response to Defendant's answer to

his motion, Plaintiff claimed not to have received the release from Defendants, but nonetheless indicated that he was "unwilling to sign Defendants' release." Rather, he indicated that he would only sign an order marking the case settled after first receiving settlement funds. In other words, he was not willing to comply with the settlement. At the hearing Plaintiff indicated that he still would not sign a release. The Court properly found that this behavior was unreasonable and that Plaintiff was not entitled to relief under Pa. R.C.P. 229.1(c).

On appeal, Plaintiff now raises a new issue: that counsel who represented him on the day of the trial was not really his attorney and had no authority to settle the case. This issue was never presented to the trial court and cannot be raised for the first time on appeal. In any case it is moot, because Plaintiff personally testified that he agreed to the settlement.

As to Plaintiff's second issue, this matter was, prior to settlement, ready to be heard as a non-jury trial. Prior to this appeal Plaintiff never raised the issue of his right to a jury trial. The case cited by Plaintiff, *Wertz v. Chapman Township*, 559 Pa. 630 (1999), is inapposite, dealing as it does with the question of when a plaintiff is entitled to a jury trial as opposed to a non-jury trial. This has nothing to do with the question of whether a settling Plaintiff can revive a civil action after having agreed to a settlement and then abrogated it. If Plaintiff intends to raise the question of whether the Court's refusal to invalidate his voluntarily agreed to settlement abridges his right to *a trial,* our Courts have held that settlement agreements are enforceable. *Century Inn, Inc. v. Century Inn Realty, Inc.*, 516 A.2d 765, 767 (Pa. Super. 1986). Having agreed to settle the case and acted unreasonably in failing to effectuate the settlement, Plaintiff cannot complain that his right to jury trial has been abridged. Therefore Plaintiff's second issue raised on appeal is without merit.

4

For the above-stated reasons, Plaintiff's appeal is without merit and the decision of the Court should be affirmed.

July 5, 2017

Gene D. Cohen                    J.

Exhibit "I"

J-A08033-18

# NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37

| | | |
|---|---|---|
| DAVID HATCHIGIAN, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| CARRIER CORPORATION AND PEIRCE-PHELPS, INC., | : | |
| | : | |
| Appellees | : | No. 1514 EDA 2017 |

Appeal from the Order Entered April 18, 2017
in the Court of Common Pleas of Philadelphia County
Civil Division at No(s): June Term, 2015 No. 4314

BEFORE: PANELLA, LAZARUS, and STRASSBURGER, JJ.*

MEMORANDUM BY STRASSBURGER, J.:       **FILED MAY 21, 2018**

David Hatchigian appeals *pro se* from the April 18, 2017 order, which denied his motion to invalidate a settlement agreement between himself and Appellees, Carrier Corporation and Peirce-Phelps, Inc. (collectively, Appellees). We affirm.

The trial court provided the following background.

> [Hatchigian] filed his *pro[]se* complaint on September 20, 2015, alleging various counts against [Appellees] in connection with Hatchigian's purchase of an air conditioning unit. According to the complaint [Hatchigian], the owner-lessor of an apartment building, purchased an air conditioning system from [Appellee] Peirce-Phelps, Inc., a distributor of air conditioning units, for use in his apartment building. The unit was manufactured by [Appellee] Carrier Corporation. The air conditioner allegedly proved defective and caused mold to grow in the property, sickening [Hatchigian's] tenants and requiring them to evacuate the premises, thus leading to lost rental income for [Hatchigian]. [Hatchigian] alleged, *inter alia*, that [Appellee] Peirce-Phelps,

---

*Retired Senior Judge assigned to the Superior Court.

Inc., violated its contract of sale by failing to deliver a working air conditioning system and by failing to repair it once notified of its defective condition. [Hatchigian] also sought to hold liable [Appellee] Carrier Corporation for negligence in its design of the system. [Appellees] filed their answers on October 20, 2015, and October 29, 2015, respectively. The matter proceeded to arbitration and on March 30, 2016, the arbitrators found in favor of [Appellees]. The matter was scheduled for trial on January 23, 2017. On the day of trial [Hatchigian], then represented by counsel, agreed to a settlement with [Appellees], the terms of which were placed on the record. In pertinent part, [Hatchigian] was to receive $3,000.00 in exchange for an agreement to dismiss claims against [Appellees]. [Hatchigian] was sworn and stated on the record that he accepted the settlement as read.

On March 5, 2017, [Hatchigian], now pro[]se, filed a [m]otion to [i]nvalidate [s]ettlement, alleging that [Appellees] had wrongfully withheld the settlement funds. [Appellees] filed their respective [a]nswers in opposition on March 16, 2017. On April 18, 2017, a hearing was held on [Hatchigian's] motion. The [trial court] heard evidence that [Hatchigian] had refused to execute the release provided to him by [Appellees], and that settlement funds were withheld for this reason. On April 18, 2017, the [trial court] denied [Hatchigian's] motion, writing in its order: "[Hatchigian] was represented by counsel at the original settlement. The [trial] court finds [Hatchigian's] pro se conduct unreasonable in failing to sign an appropriate and necessary release in order to secure the funds from [Appellees'] insurance compan[ies]."

On May 5, 2017, [Hatchigian] timely filed the instant appeal. On May 11, 2017, the [trial c]ourt issued an order pursuant to Pa.R.[A.]P. 1925(b), directing [Hatchigian] to file a concise statement of [errors] complained of on appeal within 21 days of the entry of the order on the docket. On May 31, 2017, [Hatchigian] timely filed his [s]tatement of [e]rrors. [Hatchigian] states in his 1925(b) statement that he intends to raise the following issues on appeal.

"1) Whether the court should have granted the Motion to Invalidate (Order dated April 18, 2017) and restored this case to the trial calendar where counsel at the original settlement was not counsel of record, entered no appearance and had no apparent settlement authority."

J-A08033-18

> "2) Whether the denial of a jury trial was an abuse of discretion under **Wertz v. Chapman Township**, 559 Pa. 630 (1999), where Jury Trial Fees were paid and [Hatchigian's] motion for a jury trial of July 26, 2016 was unopposed."

Trial Court Opinion, 7/5/2017, at 1-3 (citations to record omitted).

In his brief to this Court, Hatchigian presents the following issues for our review.

1. Is the verbal settlement enforceable without settlement counsel's express authority to settle?

2. Are the parties entitled to have the Magnuson-Moss Warranty Act and Commercial Code, breach of contract[,] and negligence claims decided by a jury?

3. Is this action now due to be listed for trial as the purported settlement agreement is unenforceable without mutually acceptable [r]elease terms reflecting [the trial judge's] changes?

4. Can the trial court resolve genuine issues of material fact relating to a settlement agreement without allowing discovery and holding an evidentiary hearing[?]

Hatchigian's Brief at 5-6 (answers omitted).

In reviewing these issues, we first point out that "[i]ssues not included in the [Pa.R.A.P. 1925(b) s]tatement ... are waived." Pa.R.A.P. 1925(b)(vii). Accordingly, the only issues presented or fairly suggested in both Appellant's Pa.R.A.P. 1925(b) statement and in his statement of questions involved are (1) whether counsel had authority to settle this case, and (2) whether the trial court should have scheduled this matter for a jury trial. All other issues are waived for failure to comply with Pa.R.A.P. 1925.

- 3 -

J-A08033-18

According to Hatchigian, while he retained the attorney who appeared at settlement on his behalf, that attorney "at no point had the authority to negotiate or consent to a settlement." Hatchigian's Brief at 15. Thus, Hatchigian claims he is entitled to a jury trial.

According to the trial court, "[t]he record shows that a settlement was agreed to by the parties and [Hatchigian] himself testified that he approved the settlement. (N.T. 1/23/17 pgs. 3-4)." Trial Court Opinion, 7/5/2017, at 3. Thus, it is clear that Hatchigian's argument is meritless because Hatchigian himself agreed to the settlement on the record.[1]

Based on the foregoing, we conclude the trial court did not err in denying Hatchigian's motion to invalidate the settlement agreement in this case. Moreover, because there is a valid settlement agreement, the trial court did not err by not scheduling it for a jury trial.

Order affirmed.

---

[1] Hatchigian has not included this transcript in the certified record. "It is the responsibility of appellant, not this Court, to provide a complete record for review, including ensuring that any necessary transcripts are included in the official record." ***Commonwealth v. Peifer***, 730 A.2d 489, 493 (Pa. Super. 1999).

J-A08033-18

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>5/21/18</u>

# EXHIBIT J
# N.T. APRIL 17, 2017

*APRIL 15, 2017   9:19*

# First Judicial District of Pennsylvania

*150604314*
*David Hatchigian V. Carrier Corporation*

*Motion Volume 1*
*April 18, 2017*



**CRS**
**Court Reporting System**

*First Judicial District of Pennsylvania*
*100 South Broad Street, Second Floor*
*Philadelphia, PA 19110*
*(215) 683-8000   FAX: (215) 683-8005*

*Original File hatchigian.txt.txt, 21 Pages*
*CRS Catalog ID: 17070399*

150604314
David Hatchigian V. Carrier Corporation

---

**Page 1**

[1]  IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY
     FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
         CIVIL TRIAL DIVISION
[2]                                      - - -
[3]
[4]  DAVID HATCHIGIAN,          :  JUNE TERM, 2015
         Plaintiff,            :
[5]                            :
         vs.                   :
[6]                            :
     CARRIER CORPORATION       :
[7]  PEIRCE-PHELPS, INC.,      :
         Defendants.           :  NO. 4314
[8]
[9]                    - - -
[10]         Room 682, City Hall
[11]        Philadelphia, Pennsylvania
[12]                   - - -
[13]
[14]       Tuesday, April 18, 2017
[15]  B E F O R E :
[16]    THE HONORABLE GENE D. COHEN, J.
[17]
[18]             Motion to Compel
[19]                   - - -
[20]
[21]
[22]
[23]
[24]
[25]

**Page 2**

[1]  APPEARANCES:
[2]
[3]     DAVID HATCHIGIAN
        2414 Township Line Road
[4]     Havertown, PA 19083-5236
        610-446-7257
[5]     Pro se Plaintiff
[6]
[6]     MARSHALL DENNEHEY WARNER COLEMAN & GOGGIN
[7]     BY:  KIMBERLEY J. WOODIE, ESQUIRE
        620 Freedom Business Center
[7]     Suite 400
[8]     King of Prussia, PA 19406
        Attorney for Defendant, Carrier Corporation
[9]
[10]    JAMES F. RYAN, ESQUIRE
        995 Old Eagle School Road, #306
[11]    Wayne, PA 19087
        Attorney for Defendant, Peirce-Phelps, Inc.
[12]
[13]
[14]
[15]
[16]
[17]
[18]
[19]
[20]
[21]
[22]
[23]
[24]
[25]

---

**Page 3**

[1]                  INDEX
[2]                   - - -
[3]     PLAINTIFF'S EVIDENCE
[4]
[5]  WITNESS:        DR  CR  RDR  RCR
[6]
[7]                   - - -
[8]     DEFENDANT'S EVIDENCE
[9]                   - - -
[10] WITNESS:        DR  CR  RDR  RCR
[11]
[12]                  - - -
[13]            EXHIBITS
[14]                  - - -
[15]
     NO.   DESCRIPTION    MARKED  ADMIT.
[16]
[17]
[18]
[19]
[20]
[21]
[22]
[23]
[24]
[25]

**Page 4**

[1]                  - - -
[2]     (Proceedings commenced.)
[3]                  - - -
[4]     THE COURT:  Now, I have a motion here to
[5]  compel for a settlement issue.  Come to the
[6]  bar of the court, please.
[7]     MR. HATCHIGIAN:  Good morning.
[8]     THE COURT:  This is your motion to
[9]  compel?
[10]    MR. RYAN:  No, Your Honor, it's the
[11] plaintiff's motion.
[12]    THE COURT:  The issue really is --
[13] Swear Mr. Hatchigian in.
[14]    THE COURT OFFICER:  Raise your right
[15] hand.  State your full name and spell, both,
[16] your first and last names.
[17]    MR. HATCHIGIAN:  David Hatchigian.
[18]    THE COURT OFFICER:  Spell your last name.
[19]    MR. HATCHIGIAN:  H-A-T-C-H-I-G-I-A-N,
[20] spells Hatchigian.
[21]    . .DAVID HATCHIGIAN, after having been
[22] first duly sworn, was examined and testified
[23] as follows:
[24]    THE COURT:  Now, what's the problem?  Why
[25] doesn't he get his money?  You want your money

---

Janene Lenox, O.C.R.

Page 5

[1] and he wants to know why you're not giving him
[2] his money.
[3]     MR. RYAN:  I don't know, not to sound so
[4] intelligent.  When Mr. Hatchigian filed his
[5] motion, I gathered he never received the
[6] release.  So I answered by saying, Well,
[7] you'll get your money when you sign the
[8] release, which was sent to I believe, Mr.
[9] Hobson -- Ms. Woodie might -- it was Mr.
[10] Hobson who was here the day we were supposed
[11] to start the trial, and it was instrumental --
[12]     THE COURT:  You were represented by
[13] counsel at the time, weren't you?
[14]     MR. HATCHIGIAN:  Yes.
[15]     MS. WOODIE:  And, Your Honor, he told me
[16] to send a release to him.
[17]     MR. HATCHIGIAN:  I agreed to settle the
[18] case.  And my interpretation was to sign an
[19] order saying, if the case is settled,
[20] discounted, and ended, that's it.  I had never
[21] been privy to any release that Ms. Woodie had
[22] submitted and I saw afterwards.
[23]     I'm not in agreement to that.  It would
[24] be in violation of my civil rights to sign
[25] that release there, because that release is

Page 6

[1] totally outrageous.  Outrageous, prohibiting
[2] me from ever bringing a claim against a
[3] corporation over here.  I'm not signing the
[4] release, that's over with.
[5]     What I agreed to sign --
[6]     THE COURT:  Well, listen, don't tell me
[7] what you're not doing; okay?
[8]     MR. HATCHIGIAN:  Okay.  I'm sorry.
[9]     THE COURT:  Because --
[10]     MR. HATCHIGIAN:  I'm sorry.  I apologize.
[11]     THE COURT:  -- you've asked for my
[12] assistance in this matter, so don't tell me
[13] what you're not going to do.  Tell me what the
[14] problem with the release was.
[15]     MR. HATCHIGIAN:  So I'm asking to,
[16] respectfully, invalidate the settlement and
[17] schedule --
[18]     THE COURT:  That, I'm not going to do.
[19]     MR. HATCHIGIAN:  Okay.
[20]     THE COURT:  I'm not going to do that.
[21] The question, here, is, we have to get you the
[22] money, and we have to get you the money in a
[23] way that the insurance companies can be sure
[24] that their client is released from this
[25] particular claim.

Page 7

[1]     Now, the question I have for you is, was
[2] this a general release from the beginning of
[3] time until the end of earth, that it would
[4] scare off someone from signing it?
[5]     MS. WOODIE:  It was for this unit, and
[6] that's what Mr. Hobson --
[7]     THE COURT:  Let me see what --
[8]     MS. WOODIE:  I have a copy.
[9]     THE COURT:  Hand it up to the Court.
[10]     MR. RYAN:  Pretty much, Your Honor.
[11]     MS. WOODIE:  For the unit only, and it's
[12] associated equipment.
[13]     THE COURT:  Well, this is very
[14] lawyer-like, but, in other words --
[15] Mr. Hatchigian, Hatchi -- try it for me again.
[16]     MR. HATCHIGIAN:  That's okay.
[17]     THE COURT:  I agreed to release your
[18] client from any and all claims surrounding the
[19] purchase of this particular thing.  This
[20] doesn't look like it does that.  It seems like
[21] it says that they deny everything, you deny
[22] liability.  You go through a whole bunch of
[23] things which, basically, he doesn't have to
[24] agree to.
[25]     So if he -- if the release, because the

Page 8

[1] settlement of this matter is -- and I
[2] remember, this is very lawyer-like and this we
[3] charge a couple hours in preparation of this,
[4] but, remember, I was in the same business.  We
[5] charge a couple hours for this.  This is much,
[6] much too complex and complicated for anyone to
[7] want to agree to without an attorney.
[8]     MS. WOODIE:  We had an attorney.
[9]     THE COURT:  No, but the attorney,
[10] apparently, went south on you.  Where's your
[11] attorney?
[12]     MR. HATCHIGIAN:  No, he's a friend of
[13] Mr. Ryan's.  He suggested he might be able to
[14] work something out.  He's not the attorney of
[15] record.  He's not the attorney --
[16]     THE COURT:  I don't remember him actually
[17] entering an appearance.
[18]     MR. RYAN:  He didn't.  He showed up the
[19] day of the trial, Your Honor.
[20]     THE COURT:  Yes, as some kind of an
[21] advocate, without anything like this.
[22]     MR. HATCHIGIAN:  Him and Mr. Ryan went to
[23] school together, they were friends, he thought
[24] they could work something out.
[25]     THE COURT:  But the release --

150504314
**David Hatchigian V. Carrier Corporation**

**Page 9**

[1]    Mr. Hatchigian, I agree with you, that this
[2] is -- even though this is an almost standard
[3] document that gets exchanged between lawyers,
[4] this is not the standard document that gets
[5] sent to clients, because it seems like they're
[6] giving away your children, and your rights to
[7] live, and your right to be a citizen of the
[8] United States. It seems like that; it's not.
[9] It's really innocuous, in terms of, it's a
[10] relatively harmless document, and I've seen so
[11] many of them.
[12]    But, Counsel, can you create a release
[13] that would be -- that he releases your client
[14] from any and all claims surrounding the
[15] purchase of this item?
[16]    MS. WOODIE: And its components?
[17]    THE COURT: And its components. And you
[18] do that, and that's what he releases. Because
[19] he may want to sue your client for something
[20] else; he may want to sue you for something
[21] else. But this is something that makes him
[22] feel like he can't do that. And without
[23] Mr. Hobson explaining each and every line to
[24] him, which I'm not intending to do.
[25]    Now, this is the issue, the motion to

**Page 10**

[1] compel is denied; however, the Court is
[2] ordering the defendants to prepare an
[3] appropriate release for the circumstances of
[4] this particular case. So that, as soon as you
[5] sign it, they'll give you the money.
[6]    MR. HATCHIGIAN: May I suggest, with all
[7] due respect to the Court, a release that says
[8] it's settled, discontinued and ended? That
[9] will take care of the problem.
[10]    THE COURT: Well, no. No. That doesn't
[11] take care of the problem. Because they have
[12] to be assured that you don't find another way
[13] to sue their client over the same thing in a
[14] different way.
[15]    MR. HATCHIGIAN: Right.
[16]    THE COURT: Settle, discontinue and end
[17] doesn't do that. That's why -- see, the
[18] release, plus the order to settle, discontinue
[19] and end, is what's necessary at all
[20] settlements of cases. So that their client is
[21] released from any and all claims related to
[22] the sale, purchase and installation of this
[23] particular air conditioner.
[24]    Can we do that?
[25]    MS. WOODIE: I think we can, Your Honor,

**Page 11**

[1] because I have all the component parts listed.
[2] I could, if you want me to, delete the second
[3] paragraph.
[4]    THE COURT: Well, look, you know, I've
[5] given it consideration of 3,500, both of it
[6] paid by these guys to release defendants in
[7] this case from any and all claims surrounding
[8] the purchase of these items. And that you
[9] don't -- the liability, I don't care about
[10] that. You see, all that is just --
[11]    MS. WOODIE: I think I can --
[12]    THE COURT: All that is surplusage. I
[13] don't remember what we used to call it,
[14] surplusage, is that --
[15]    MR. RYAN: Excess verbiage.
[16]    THE COURT: Well, no, it's surplus
[17] verbiage, we can agree to that, that the Court
[18] doesn't like the release, but I'm ordering to
[19] simplify the release, make arrangements --
[20]    Are the checks available?
[21]    MS. WOODIE: Well, I need a W9 signed,
[22] Your Honor, and I brought it with me today.
[23]    THE COURT: Work it out there. Go out to
[24] the other room and, either, handwrite the
[25] release, or something to that effect. Where's

**Page 12**

[1] the money?
[2]    MS. WOODIE: The client has the money,
[3] because I have to --
[4]    THE COURT: How fast can we get the
[5] money?
[6]    MS. WOODIE: I don't know. Probably a
[7] week, I would guess.
[8]    THE COURT: I understand the problem, but
[9] we're going to do this, the motion is denied,
[10] contingent upon them preparing an appropriate
[11] release that you can understand, and sign that
[12] with an order to settle and discontinue.
[13]    You're going to go outside, you're going
[14] to do the W9 form, so that -- they're going to
[15] need your Social Security number, and put that
[16] down on there so that they can get a deduction
[17] for having paid you.
[18]    I'm going to set you outside. If there's
[19] a problem with this, let the court officer
[20] know and we'll have a discussion on it.
[21]    MR. RYAN: You want us to prepare a new
[22] release outside, Your Honor?
[23]    THE COURT: If you can. I have a
[24] computer in here, we can type one out, I
[25] guess. But it's --

150604314
David Hatchigian V. Carrier Corporation

Page 13

[1]     Where's your offices?
[2]     MS. WOODIE: 2000 Market.
[3]     THE COURT: I know where you are.
[4]     MS. WOODIE: But I can get access to it
[5]  at 2000 Market.
[6]     THE COURT: Go outside and work it out.
[7]     MR. HATCHIGIAN: Thank you.
[8]                 - - -
[9]         (Short recess.)
[10]                - - -
[11]     THE COURT: What's the issue?
[12]     MR. HATCHIGIAN: Okay. I have prepared a
[13]  release, I'm willing to staple it to my
[14]  64-page complaint, releasing both defendants
[15]  for everything that's in my 64-page complaint,
[16]  which I think is fair, or at least it should
[17]  be released.
[18]     MS. WOODIE: Your Honor, it rambles, it's
[19]  inconsistent. It's a document that I would
[20]  feel comfortable litigating later, if that's
[21]  the scope of the case.
[22]     MR. RYAN: Your Honor, we pared-down the
[23]  release that was originally sent, and I
[24]  explained to Mr. Hatchigian, telling him I'm
[25]  not his lawyer, but explained to him, and

Page 14

[1]  there's only -- there's one issue that we've
[2]  sort of come to odds with.
[3]     THE COURT: What's the one issue?
[4]     MR. RYAN: That -- this whole thing, sort
[5]  of, originated because Mr. Hatchigian
[6]  purchased a Carrier, as you know.
[7]     THE COURT: I'm aware of the facts of the
[8]  case.
[9]     MR. RYAN: And he installed it himself.
[10]    MS. WOODIE: And he represented he was a
[11]  mechanical contractor.
[12]    MR. RYAN: And under the terms of the
[13]  instructions and all, these things have to be
[14]  installed by a Carrier, a licensed person,
[15]  which he is not. Well, not licensed, but a
[16]  qualified person.
[17]    THE COURT: That was the defense in the
[18]  matter, I understand that.
[19]    MR. RYAN: Right. And he's going -- the
[20]  belief would be that he's going to do it
[21]  again.
[22]    MS. WOODIE: He says he's going to do it
[23]  again.
[24]    MR. RYAN: He says he's going to do it
[25]  again.

Page 15

[1]     THE COURT: Do it again to, who?
[2]     MR. RYAN: He's going to file with
[3]  another Carrier and put it in by himself.
[4]     THE COURT: The question here, is, who's
[5]  being released in this matter?
[6]     MR. RYAN: Carrier and Peirce-Phelps.
[7]     THE COURT: So what's the issue? So he's
[8]  releasing Carrier?
[9]     MS. WOODIE: He doesn't know how to
[10]  install it. Not -- electrically, I'm not
[11]  disputing that. But, Your Honor, he made
[12]  several decisions not to do things that the
[13]  instructions say, and if he did, indeed, have
[14]  water or condensation in the unit, it was
[15]  because of that.
[16]    THE COURT: Well, that's the defense. I
[17]  don't know whether that's -- that's a
[18]  contested fact in this matter. So we're
[19]  releasing Carrier?
[20]    MS. WOODIE: Yes, for this unit and the
[21]  associated equipment.
[22]    THE COURT: And you're afraid he's going
[23]  to buy another Carrier?
[24]    MS. WOODIE: He said he was going to do
[25]  it.

Page 16

[1]     THE COURT: And try to install it again
[2]  and then file another lawsuit?
[3]     MS. WOODIE: Um-hum.
[4]     MR. HATCHIGIAN: This is a package unit,
[5]  Your Honor --
[6]     THE COURT: No, don't tell me that. The
[7]  question really is, is that, then it becomes a
[8]  scam; do you understand? You buy it and then
[9]  install it, then sue, that's what they're
[10]  trying to prevent.
[11]    MR. HATCHIGIAN: Yeah.
[12]    THE COURT: So the question really is,
[13]  they want you to stay away from buying and
[14]  suing Carrier again for the same thing.
[15]    MR. HATCHIGIAN: Right. I asked --
[16]    THE COURT: Now, I remember this happened
[17]  one time, and our eminent Mr. Sprague did the
[18]  same thing with Verizon, and ended up
[19]  releasing a particular claim and then starting
[20]  another claim with the same plaintiff, and it
[21]  became almost like a cottage industry for a
[22]  while.
[23]    MR. RYAN: There's a history here, Your
[24]  Honor, that might suggest --
[25]    THE COURT: So what kind of language

150604314
David Hatchigian V. Carrier Corporation

Page 17

[1] would you like to stop this from happening
[2] again?
[3]     MS. WOODIE: Your Honor, do you have the
[4] copy I gave you?
[5]     THE COURT: Yes, I have it here.
[6]     MS. WOODIE: It's the sentence that's the
[7] second to the last paragraph on page one.
[8]     THE COURT: No, that's making an
[9] admission that he doesn't have to do it. I
[10] don't like that, either. I also specifically
[11] acknowledge that any --
[12]     THE COURT REPORTER: I'm sorry, Your
[13] Honor, slow down, please.
[14]     THE COURT: The language that's being
[15] complained of -- is this the language you're
[16] complaining of: I also specifically
[17] acknowledge that any brand of Carrier
[18] air-conditioning equipment must be installed
[19] by a qualified mechanical trade
[20] person, and that I am not a qualified licensed
[21] mechanical trade person.
[22]     MR. HATCHIGIAN: Right.
[23]     THE COURT: Why would he have to make
[24] that admission?
[25]     MS. WOODIE: Because if he goes and buys

Page 18

[1] another one and does it again --
[2]     MR. RYAN: First change the language --
[3]     MR. HATCHIGIAN: First of all, I am
[4] qualified, number one. And there's nothing --
[5] I asked Ms. Woodie to show me where it says in
[6] her manufacturer's instructions that you have
[7] to be a steamfitter. She can't find it. I am
[8] the qualified person. I will continue buying
[9] them, continue to install them, and if I have
[10] a problem, I will hold this corporation liable
[11] for it.
[12]     My release --
[13]     THE COURT: No, you're not going to do
[14] that.
[15]     MR. HATCHIGIAN: Okay.
[16]     THE COURT: No, you're not going to do
[17] that.
[18]     MR. HATCHIGIAN: My release, here, says
[19] to settle, discontinue in Philadelphia Common
[20] Pleas Court, No. 1506 --
[21]     THE COURT: No, your release is -- I'll
[22] tell you what I'm going to do, Mr. Hatchigian,
[23] if you don't begin to cooperate and understand
[24] what their issues are with you, I'm going to
[25] deny your motion to compel and that will be

Page 19

[1] the end of it. And then you'll be in a
[2] position here to either sign the release that
[3] they want or not get the money.
[4]     Now, you can't be unreasonable with me.
[5]     MR. HATCHIGIAN: No, I'm not being
[6] unreasonable.
[7]     THE COURT: Their position is, and what
[8] they're concerned about, they're settling with
[9] you, but they don't want you buying and
[10] installing any more Carrier air-conditionings
[11] and then come around and sue them again, which
[12] is a reasonable request.
[13]     What language would you like that you're
[14] not going to do that again?
[15]     MR. HATCHIGIAN: I'm not agreeable to
[16] that.
[17]     THE COURT: Okay. Well, then, the motion
[18] to compel is denied, and then you can sit on
[19] your settlement and try to file an appeal from
[20] this.
[21]     MR. HATCHIGIAN: Thank you.
[22]     THE COURT: There you are. You're
[23] excused.
[24]
[25]     (Proceedings concluded.)

Page 20

[1]
[2]
[3]
[4]
[5]
[6]
[7]
[8]
[9]
[10]
[11]
[12]
[13]
[14]
[15]
[16]
[17]
[18]
[19]
[20]
[21]
[22]
[23]
[24]
[25]

Janene Lenox, O.C.R.

150604314
David Hatchigian V. Carrier Corporation

[1]         CERTIFICATION                    Page 21

[2]

[3]         I hereby certify that the proceedings and

[4]     evidence are contained fully and accurately in

[5]     the notes taken by me on the trial of the

[6]     above cause, and that this copy is a correct

[7]     transcript of the same.

[8]

[9]

[10]

[11]

[12]

[13]

[14]         JANENE L. LENOX
            Official Court Reporter

[15]

[16]

[17]

[18]         (The foregoing certification of this

[19]     transcript does not apply to any reproduction

[20]     of the same by any means unless under the

[21]     direct control and/or supervision of the

[22]     certifying reporter.)

[23]

[24]

[25]

Court Reporting System (Generated 2017/07/14 11:37:41)

Janene Lenox, O.C.R