AO 440 (Rev. 06/12) Summons in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
### Eastern District of Pennsylvania

| | |
|---|---|
| DAVID HATCHIGIAN AND JOAN RANDAZZO | ) ) ) ) ) ) |
| *Plaintiff(s)* | ) |
| v. | ) Civil Action No. 20-4110 |
| CARRIER CORPORATION AND PEIRCE-PHELPS | ) ) ) ) ) |
| *Defendant(s)* | ) |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*   CARRIER

MARSHALL DENNEHEY WARNER, COLMAN GOGGIN, CAROLYN MICHELLE SCHWEIZER 2000 MARKET STREET, SUITE 2500, PHILA PA 19105
PIERCE-PHELPS JAMES F. RYAN SCHUABENLAND + RYAN P.C. 995 OLD EAGLE SCHOOL ROAD SUITE 500 WAYNE PA. 19163

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

DAVID HATCHIGIAN
2414 TOWNSHIP LINE
ROAD
HAVERTOWN, PA 19083

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

Date:   8/24/20

CLERK OF COURT

*S/John Arrow*
_____
*Signature of Clerk or Deputy Clerk*

**Kate Barkman, Clerk of Court**
**U.S. District Court, Eastern District of PA**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

DAVID HATCHIGIAN AND
JOAN RANDAZZO,

Plaintiffs,

vs.

Civil Action No. 20-4110

COUNTY OF PHILADELPHIA,
COURT OF COMMON PLEAS
OF PHILDELPHIA COUNTY,
CARRIER CORPORATION,
AND PEIRCE-PHELPS,

JURY TRIAL DEMAND

Defendants.

AMENDED COMPLAINT

Plaintiffs DAVID HATCHIGIAN and JOAN RANDAZZO, file this amended

pleading in their action against Defendant COUNTY OF PHILADELPHIA, Defendant

CARRIER CORPORATION and Defendant PEIRCE PHELPS (hereinafter collectively

"Defendants"), seeking a Declaratory Judgment pursuant to 42 Pa. C.S. § 7532 and

alleging breach of settlement and denial of due process under the Pennsylvania and

Federal Constitutions.  Additionally, the claims previously filed by Plaintiff Hatchigian

against Defendant Carrier and Defendant Peirce-Phelps in Philadelphia County

Common Pleas Court on Sept. 20, 2015 under CP Case No. 150604314 have yet to be

litigated and incorporated by reference and re-pled below as recited verbatim herein. A

true copy of the Complaint in CP Case No. 150604314 is attached hereto as Ex. B.

I.    INTRODUCTION

1.    Like thousands of homeowners across the country, Plaintiff Hatchigian

purchased an air conditioner from the HVAC (heating, ventilation, and air conditioning)

1

experts at Carrier to cool his residence during the summer months.  Carrier advertises its product as specifically designed for residential use, and prices the product accordingly.

2.      But after installation, the unit degrades, de-composes, rots, cracks, splits, checks, splinters, peels, delaminates, flakes, soaks, expands, swells the surrounding wall where the unit is installed, causing the structure to develop wet mold and mildew, black spots, streaking and discoloration, and contaminating the air breathed by occupants with mold spores.

3.      In September of 2015, Plaintiff Hatchigian alleged the extensive mold damage to his Brentwood property (located @ 7512 Brentwood Road, Philadelphia, PA 19151 (hereinafter "the Property") in the state court action, which requested both injunctive relief and money damages (See Case No. 150604314. First Judicial District of Pennsylvania, Court of Common Pleas of Philadelphia)(hereinafter "state court action"; "underlying action", Case No. 150604314")    Ex. B

4.      The state court action alleged that warrantor Carrier refused to reimburse his replacement costs and replaced the defective unit with other defective units, denying warranty coverage for uninstallation, removal and reinstallation labor, costs to repair structural damage to walls and roof at the Property, residential mold remediation service charges, lost rent and medical fees for testing and diagnosis of developing mold-related health conditions, none of which would have arisen but for Carrier's breaches and negligence.  See Counts I through Count V, Complaint, No. 150604314. Ex. B

5.      The state court action was called to a non -jury trial on Jan. 23, 2017 before the Honorable Gene Cohen, at which time it became evident there was no cause

2

of the alleged roof leak and mold contamination at the Property other than Carrier roof top unit and that seller Peirce's post-installation repair service had been insufficient to stop the roof leak and the consequential property damage to Plaintiffs' residence caused by the Carrier HVAC unit. See Common Pleas Complaint, No. 150604314, at ¶¶ 4-26.  Ex. B

6.       The Carrier air conditioner litigated in the state court action came with no mold warning when installed and Carrier does not provide the warranty directly to consumers at the time of sale. In the absence of a duty to recall the product, Defendant Carrier's sole defense relied on a disclaimer of consequential damages provided to Hatchigian only after he submitted his warranty claim to Carrier (i.e., long after the original sale) and purporting to waive all of Hatchigian's costs and charges (see Common Pleas No. 150604314, Complaint at P1- P5). Carrier's attorney could not refute the company's notice of the fact that the amount claimed under the warranty far exceeded the original purchase price of the Carrier unit, so that Defendant Carrier's subsequently- disclosed limited warranty and the post-sale repair attempts were no remedy at all; it was well aware of the mold-inducing effect of proper installation when placing the defective air conditioner with the known defect back on the market. Common Pleas No. 150604314, Complaint, at ¶76.

7.       Counsel for Carrier offered to settle the case on the eve of trial but knowingly engaged in settlement conduct that resulted in a sham settlement process, depriving Plaintiff Hatchigian a day in court on his legal claims. Therefore, the instant Amended Complaint is filed to vindicate Plaintiffs' individual rights as U.S. consumers and alleges constitutional violations, damages, injunctive and declaratory relief under 42

USC §1983 seeking this Court's clarification of consumers' settlement rights regarding future actions commenced in the state courts of Pennsylvania.

## II.    JURISDICTION AND VENUE

8.    Plaintiffs state violations of the state and Federal Constitutions against Defendant County of Philadelphia and Defendant Court of Common Pleas of Philadelphia County, thereby conferring jurisdiction on this Court pursuant to 28 U.S.C. § 1331 with respect to Counts II and III. [1]

9.    Additionally, this Court has subject matter jurisdiction pursuant to 28 USC § 1332(a) as to Counts I, VI-XI (pled against Defendants Carrier and Peirce and seeking $50,000 in exemplary damages plus compensatory damages of approximately $30,000.00 including the purchase price of the subject Carrier HVAC product, $15,000.00 in costs to uninstall and replace the subject Carrier unit, loss of the use of their home, $2000.00 in mold remediation charges and mold-related expenses, $1,000.00 for HVAC inspection, approximately $10,000.00 in lost rents, court fees and litigation expenses including $5,000.00 for legal research, and $3,000.00 in settlement funds foregone under the Settlement Agreement)

10.    The value of these claims exceeds $75,000 and these counts involve citizens of different states and citizens of a foreign state who are not residents of a state of the United States. Defendant PEIRCE-PHELPS is a Delaware corporation engaged

---

[1] The Plaintiffs allege unconstitutional actions by Defendant County of Philadelphia and Defendant Court of Common Pleas of Philadelphia County which have denied Plaintiff Hatchigian the exercise of his constitutional rights, that their supervision of the settlement process in the state court action was in a manner as to deprive Hatchigian of his civil rights under the color of state law and violate clearly established due process rights belonging to him and guaranteed him under the Constitution of the State of Pennsylvania and the United States Constitution.

in the sale and distribution of air conditioning and heating systems, and was recently acquired by Watsco, a Florida entity headquartered at 2665 South Bayshore Drive, Suite 901 Coconut Grove, Florida 33133 U.S.A.  Defendant Carrier Corporation is a Delaware corporation. Until 1990, its principal place of business was located at 6304 Thompson Road, Syracuse, New York 13221, U.SA.  In 1990, its corporate "nerve center" was moved to One Carrier Place Farmington, Connecticut 06032.  Contrary to Carrier's prior Motion to Dismiss the entity called Carrier Global Corporation, based in Palm Beach Gardens, Florida, is not a party in the instant action. (See Note 2, MOTION OF DEFENDANT CARRIER CORPORATION TO DISMISS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)) (ECF No. 9) ("It should be noted that the Defendant Carrier Corporation is a Delaware corporation with a principal place of business in Florida. It is not New York corporation")

11.    This Court also has federal question jurisdiction as to Count V (pled pursuant to 42 U.S.C. § 1983) requesting prospective declaratory relief as the claims brought in the state court have yet to be adjudicated and should have been restored to the civil trial calendar once a conforming settlement release failed to materialize in accordance with the parties' prior stipulated settlement and the settlement court's explicit instructions.

12.    Venue is proper in the Middle District of Pennsylvania under 28 U.S.C. § 1391(b)(1), since Defendants reside in the district; alternatively venue is proper under Section 1391(b)(2) because a substantial portion of the events or omissions giving rise to the present claim occurred in the district. See id. at § 1391(b)(2).

## III.    THE PARTIES

5

13.     Plaintiff David Hatchigian and Plaintiff Joan Randazzo are residents of Havertown, Upper Darby Township, Delaware County, Pennsylvania, United States.

14.     Defendant County of Philadelphia is a county of the Commonwealth of Pennsylvania.

15.     Defendant PEIRCE-PHELPS (hereinafter, "Peirce") is a Delaware corporation engaged in the sale and distribution of air conditioning and heating systems, and was recently acquired by Watsco, a Florida entity headquartered at 2665 South Bayshore Drive, Suite 901 Coconut Grove, Florida 33133 U.S.A.

16.     Defendant CARRIER CORPORATION (hereinafter, "Carrier") is a Delaware corporation engaged in the designing, engineering, and installation of air-conditioning and temperature-control systems and is one of the fifty (50) largest HVAC distributors in the country.  Defendant Carrier is incorporated in Delaware and maintains its principal place of business at One Carrier Place Farmington, Connecticut 06032 United States.

## IV.     GENERAL ALLEGATIONS

### A. FACTS IN THE UNDERLYING ACTION

17.     The Plaintiffs bought the Carrier product litigated in state court, a Carrier rooftop condensing air conditioning unit, Model 50GL, Serial # 3805041639 (hereinafter "roof top unit") from HVAC distributor Peirce in 2005.  The unit was purchased for the couple's personal and household use and warranted to be in good working condition at the time of Peirce's 2005 installation in the roof of the Property. See Common Pleas Complaint, No. 150604314, at ¶8) The mold inducing defect of the air conditioning unit was not apparent at sale or upon the first two post-installation inspections by the seller.

6

(Common Pleas Complaint, No. 150604314, at ¶¶ 12-21). Married Plaintiffs were living in the ground floor apartment at the time, Hatchigian was the owner-lessor of the Property, and there were no mold issues anywhere in the Property. (Common Pleas Complaint, No. 150604314, at ¶ 12 and ¶ 20)  Ex. B

    18.    As recommended by Carrier's Guide to Operating and Maintaining your Single-Packaged Electric Cooling Unit, Plaintiffs utilized unit for the principal function it was advertised to perform, regularly replaced the filters in the roof top unit (at least twice annually from 2005-2013) and maintained the filters in accordance with the manufacturer's specifications and otherwise specifically complied with the use and maintenance recommendations in Carrier's written warranty. They maintained and cleaned the unit, including the interior coils and blower wheels, and periodic operational checks were performed by Plaintiffs, including for thermostat cooling set points. These checks were performed twice annually, in 2008, 2011, and again in 2013 (Id., at ¶10), and in the course of the check in 2013, homeowner Hatchigian discovered mold growth as well as water damage near and around the roof of the Property. (Id. at ¶11) Unbeknownst to Plaintiffs at the time of sale, their formerly mold-free Property would become temporarily unfit for habitation when the product malfunctioned. Carrier's product came with drainage components intended to remove liquid condensate and prevent condensate build-up, but these failed to function, triggering widespread moisture seepage below the unit in quantities sufficient to cause mold growth. (Id., at ¶8 and ¶42)  Carrier's distributor's representation of waterproofness and the unit being designed for roof top installation and residential use led the Plaintiffs to believe the unit was suited for normal residential use and nonhazardous; without the represented

7

"waterproof" quality of the product Plaintiffs would never have agreed to purchase or installed the Carrier unit at the Property. (Id. at ¶8 and ¶20)  Carrier's product malfunctioned in the absence of any preexisting defects in the Property's roof, roof paneling at the installation site or in the flooring or surrounding wall where mold eventually appeared. The upper floor apartment of the Property was periodically leased out to tenant occupants since 2014. During the summer months the HVAC unit drew humid air into upstairs of the building and spread mold, contaminating the upstairs apartment (Id., at ¶4, ¶19, ¶34)  In June 2015, Plaintiffs' vacated the Property, abandoning their apartment and the lease with Plaintiffs, citing water damage and health concerns due to mold infestation in ductwork, including recurring sinus and bronchial infections and headaches triggered by the effect of insufficient air return on airways triggered by the exposure to mold spores. (Id., at ¶49, ¶57, ¶54) Owner-lessor was left with lost rents and no ability to re-lease.

19.     Plaintiff Randazzo and Plaintiff Hatchigian were forced to temporarily vacate the Property from June to July 2015 during professional mold remediation.

20.     The warranty document only later supplied by Carrier's representative stated that the roof top unit came with five (5), ten (10) and fifteen (15)-year warranties from the original installation date. (See copy of "Extended Protection Warranty" from Carrier Customer Relations response with attachments, dated March 11, 2015, 3:17 p.m.) (CP #150604314, Compl.Ex. 15)  The optional filter rack Filter Rack Accessory, Parts # 99080302 or 99080262 shipped by Peirce Phelps had dimensions that did not fit the subject unit. (CP #150604314, Compl. Ex.'s 10, 11, 25, 28-29)

8

21.     After the roof top unit failed in its intended use and showed itself to be defective and dangerous, Carrier denied the unit was waterproof and dismissed the results of the seller's inspection and written confirmation that 100% of the mold at the Property was directly traceable to the defectively designed HVAC system and the Carrier unit's inability to process condensate or with defective installation, See Elite Water Damage Restoration, Inc. report ("EWDR") (CP #150604314, Compl. Ex.'s 55-90)

22.     A follow-up inspection was conducted HVAC technician Mr. Vagnozzi on February 27, 2015; as with the initial inspection the sheet metal screws in the unit's housing were resealed and Vagnozzi verbally warranted no further roof leaks, but the weather was too cold to spray the unit to check for moisture levels. The third inspection of the Property and the unit was conducted in July 2015 and the roof leak remained. Seller Peirce and the third party EWDR each independently verified that water was entering Plaintiffs building via the rooftop unit; according to EWDR's inspectors until the unit was replaced it would continue to generate mold, making the building unfit for human habitation.  The exterior of the Property was damaged by the mold growth. Plaintiffs lost the use of their home, were subject to the diminution of the value of the Property and incurred $1,700.00 for professional mold remediation services, additional costs in contracting fees, labor, materials to renovate to prevent long term mold effects of the malfunction, and paid out of pocket fees for laboratory testing.  Vagnozzi's inspection results led to Carrier's offer of settlement led to settlement negotiations. (See Settlement Release and Agreement, *D.H. vs. Carrier & Pierce-Phelps* #150604314), but Carrier failed to provide any of the warranted repair and no restitution has been

forthcoming from Peirce or Carrier. Plaintiffs sustained $10,000.00 in profit and rents, including $2,700.00 in lost rents during mold removal and $1,000.00 to have the HVAC expert inspect the HVAC system, plus additional sums to pursue the state court action, bringing the current balance of the Plaintiffs' out of pocket losses with no offsets or credits applied, to approximately $30,000.00. None of this outlay was reimbursed by Carrier or Peirce Phelps. Plaintiffs remain at risk of frequent respiratory infections initially caused by mold bacteria.

### B. THE  UNDERLYING ACTION ("THE STATE COURT ACTION")

23.     The state court action was called to a non -jury trial on Jan. 23, 2017 before the Honorable Gene Cohen. Defendant Carrier did not offer to settle the case until the eve of trial.

24.     Carrier procured Hatchigian's consent to the $3,000.00 reduced figure by counsel's representation to Hatchigian that a limited release would be executed post-hearing. Before being read into the record, the agreed-upon settlement terms included delivery of $3,000.00 and submission by Carrier's attorney of a corrected, revised release in exchange for the dismissal of all of homeowner David Hatchigian's causes of action against Defendant Carrier.

25.     The scope of the release was treated by the trial court as a material term of the parties May 21, 2018 settlement agreement. See *David Hatchigian v. Carrier Corporation*, 150604314, Notes of Testimony, Apr 18, 2017, P5-P6, P9, Lines 25-11:9, P12, Lines 8-12 (Ex. J).

26.    Carrier inserted a waiver of all of the plaintiff purchaser's rights to purchase any Carrier product or bring any legal claims in any court connection with such future purchases.

27.    This language was never legally mandated in the first instance, and Judge Cohen found it unconscionably broad under the circumstances.

28.    Trial Judge Cohen also made it clear to both sides that the court's denial of Hatchigian's pending motion to compel was strictly "contingent" on Carrier submitting an appropriate version of the release that did not contain this language.

> THE COURT: *I understand the problem, but we're going to do this, the motion is denied, contingent upon them preparing an appropriate release that you can understand, and sign that with an order to settle and discontinue.*
>
> -    *David Hatchigian v. Carrier Corporation*, 150604314, Notes of Testimony, Apr 18, 2017, P 12, Lines 8-12 (Ex. J)

29.    Judge Cohen agreed with Hatchigian regarding the propriety of Carrier's expansive release provision and found no legitimate reason to include the waiver language as to future purchases and claims, and ordered that the matter be marked settled, and the docket entry for Jan. 24, 2017 stated: "SETTLED AFTER ASSIGNMENT FOR TRIAL. SETTLEMENT PLACED ON RECORD. BY THE COURT: G. COHEN, J 1/23/17." This entry links to the Trial Worksheet signed by Judge Cohen and dated Jan. 23, 2017, which was entered into the docket on Jan. 24, 3017.  The docket for Jan. 24, 2017 also reflects that Rule 236 notice was given on that date.   At no point during the Jan. 23, 2017 settlement conference did counsel give any indication that Carrier's attorney would simply re-introduce language rejected by Judge Cohen when memorializing the settlement release.   Once the Settlement Agreement had been read into the record with both sides and their respective counsel present, counsel for

11

Carrier verbally re-confirmed the material caveat that the release terms would be reduced to a new writing that omitted the overbroad prohibitive language as to future purchases and claims.

30.     Defendant Carrier then breached the Settlement Agreement by unilaterally modifying the mutual release recorded on Jan. 23, 2017 and including the language rejected by Judge Cohen, i.e., the memorialized release document presented to Plaintiff for signature post-hearing contained the unconscionably broad waiver of future rights, and the promised memorialization was never presented for Plaintiff's signature.

31.     Afterwards, the Common Pleas Court and Philadelphia County approved settlement counsel's purposefully waiting till after Trial Judge Cohen's Jan. 23, 2017 settlement hearing to submit the nonconforming version of their release to Plaintiff as a condition of payment/settlement enforcement.

32.     The document generated post-hearing violated the trial court's explicit guidance to omit all general language of waiver as to all future purchases and claims in relation to Carrier products.

33.     At no point did Hatchigian acquiesce in Carrier's unauthorized, ad hoc modification or counsel's bad faith engagement in the settlement process.  As was known to Defendant Carrier and its settlement counsel, consumer Hatchigian had never bargained for or agreed to a release of unlimited scope.

34.     Carrier was at all times on notice when participating in the underlying settlement process, that the opposing party was neither willing nor required to sign such a waiver as a matter of law but he writing submitted to Plaintiff after Jan. 23, 2017 materially departed from the agreed-upon terms of settlement in a manner to

contravene the judge's finding that precluding plaintiff from purchasing future Carrier products or bringing a future claim in relation to any future purchase was unconscionably broad.

35.     When Carrier continued its attempts to procure his signature on the broader version of the settlement by withholding the settlement check, Hatchigian moved to invalidate the settlement and restore the case to the trial calendar.  (Ex. E) There was a hearing before the trial judge on the motion, which Carrier's attorney attended and refused to perform the Settlement Contract because Hatchigian was being unreasonable and should be forced to sign any release offered. (Ex. F) Plaintiff moved for a rehearing on the propriety of Carrier's written release by appealing the order denying the motion. (Ex. G), which was denied on July 5, 2017 (Ex. I)

36.     Based on Counsel's settlement conduct, the nonconforming release was never made a part of the Settlement Agreement recorded on Jan. 23, 2017 as a matter of law, yet the defendant Court and the defendant County ignored settlement counsel's misrepresentations regarding the bargained-for settlement release when denying him relief on the Motion to Invalidate; Philadelphia Common Pleas not only approved counsel's lack of candor when presenting the nonconforming release and informing him that it was in his best interests to execute it, but upheld this conduct upon Plaintiff's motion and in subsequent appeals; the County was at all times noticed of the fact that its supervision of the underlying settlement would insure Plaintiff Hatchigian received neither a jury trial on the merits nor the benefit of a standard settlement process.

37.     At a minimum, settlement counsel's departure from the release terms represented by counsel to the court on Jan. 23rd  raised the issue of settlement validity

13

and a question of law  whether the Settlement Agreement became law of the case.  See In re Estate of Riddle (Pa. Super. Ct., 2018) (Due to ambiguities and undetermined matters which rendered the settlement agreement impossible to understand and enforce, the agreement was not the law of the case and was properly set aside.)

38.    Upon ruling on settlement validity and dismissing Plaintiff's appeals, the Defendant County of Philadelphia failed to restore Hatchigian's matter to the civil docket, and Plaintiff Hatchigian was deprived of a day in court on his still-disputed claims as a result.

## COUNT I
## BREACH OF SETTLEMENT
### (Against Defendant Carrier Corporation)

39.    The allegations of Paragraphs 1 to 46 are incorporated herein as if re-alleged in full.

40.    Plaintiff David Hatchigian and Defendant Carrier entered into a Settlement Agreement that was fully executed by all parties and their respective counsel no later than on or about Jan. 23, 2017.

41.    Pursuant to the terms of the Settlement Agreement, Defendant Carrier was required to deliver $3,000.00 and provide a corrected copy of the release document in exchange for the dismissal of all of homeowner Hatchigian's causes of action against Carrier.

42.    Plaintiff Hatchigian performed all material conditions, covenants and promises required to be performed on his part in accordance with the terms and conditions of the Settlement Agreement.

14

43.     Defendant Carrier intentionally and materially breached the Settlement Agreement by withholding payment and making performance contingent on his execution of a release that materially deviated from the settlement terms mutually recorded in the presence of Judge Cohen on Jan. 23, 2017.

44.     Defendant Carrier's breach of the Settlement Agreement constitutes action taken by Defendant intentionally and in bad faith.

45.     These actions have caused Plaintiff unnecessary damage and expense including, without limitation, the necessity for pre-litigation efforts to obtain Defendant's compliance with the terms of the Settlement Agreement and the bringing of successive appeals as well as the instant action to obtain durable relief from Defendant's fraudulent and deceptive settlement practices.

46.     Defendant Carrier has not cured its material breaches of the Settlement Agreement, and said breaches have caused further damages to Plaintiffs, including, without limitation, the damages on his claims against Carrier in Case No. 150604314, $3,000.00 in foregone settlement funds, Plaintiffs' foreseeable, consequential damages including attorneys' fees, legal research costs and expenses for litigation which was to be resolved by the settlement.

47.     As a direct result of Carrier's breach of the Settlement Agreement, Plaintiffs have now incurred foregone damages and settlement proceeds well in excess of $30,000.

48.     None of this additional outlay of resources and expenses was incurred by Plaintiff if Defendant had simply complied with the Settlement Agreement.

49.     As a direct result of Defendant County of Philadelphia's total failure to cure its oversight when deciding Plaintiff's Motion to Invalidate and/or when granting Hatchigian's appeals of the release issue, Hatchigian was deprived of due process and the exercise of constitutional rights guaranteed him under the Constitution of the State of Pennsylvania and the United States Constitution.

50.     In addition, Plaintiffs herein are entitled to an award of damages for Defendants' breach, including consequential and special damages in the form of attorneys' fees, costs and expenses, together with interest on all the damages that have accrued, both before and after judgment.

## COUNT II

### VIOLATION OF THE UNITED STATES CONSTITUTION - FOURTEENTH AMENDMENT: DUE PROCESS

### (Defendants Philadelphia County and Court of Common Pleas of Philadelphia County)

51.     The allegations of Paragraphs 1-58 are incorporated herein as if re-alleged in full.

52.     When denying Hatchigian's Motion to Invalidate and subsequent appeals, the Defendant County of Philadelphia disregarded that civil actions are due to restored in the event settlements fail to materialize in the manner herein complained of.

53.     Denying Plaintiff Hatchigian's motion to invalidate and subsequent appeals of the release issue without restoring his case to the Jury Trial Calendar also deprived  Mr. Hatchigian of the jury trial he paid the County for, violating notions of 'fundamental fairness' inherent in the concept of due process.

54. The Due Process Clause of the Fourteenth Amendment to the United States Constitution prohibits states from depriving its citizens of fundamental rights without due process of law.

55. As materially revised after the fact by Carrier's counsel with the approval of defendant County and the defendant Court, the Settlement Agreement infringed on the due process rights of the purchaser/ consumer under the federal Constitution.

56. In the underlying action Carrier's fraud on the court was facilitated by the Defendant County and the Defendant Court when exercising their supervisory authority over the settlement in a manner that would inevitably result in a one-sided settlement process.

57. The resultant settlement process has now infringed Plaintiffs' rights under the substantive and procedural prongs of the Due Process Clause.

58. Due to Carrier's unilateral breach of the recorded settlement terms and ad hoc settlement conduct, Hatchigian was deprived of a trial on the merits of his claims.

59. The right to judicial proceedings is a fundamental right, and laws that infringe on that right are subject to strict scrutiny. See *Zablocki v. Redhail*, 434 U.S. 374, 388 (1978). "To survive strict scrutiny, a state must do more than assert a compelling state interest-it must demonstrate that the law is necessary to serve the asserted interest." *Burson v. Freeman*, 504 u.s. 191, 199-200 (1992).

60. In addition, neither the County of Philadelphia nor the Common Pleas Court have any compelling state interest in enforcing contracts of adhesion like the settlement agreement here. Whereas Settlements are to be encouraged it nevertheless offends due process if a settling party's unilateral acts could bind the other party without

notice and an opportunity to be heard. *Jennings v. United States*, 374 F.2d 983, 986 (4th Cir.1967). "Deciding whether to try a case to judgment or to settle it involves elements of legal evaluation, of financial capacity to take risk, and of appetite for court room conflict which vary widely among litigants." *Whisenant v. Brewster-Bartle Offshore Co.*, 446 F.2d 394, 402 (5th Cir.1971) (*quoting Tankrederiet Gefion A/ S v. Hyman-Michaels Co.*, 406 F.2d 1039, 1043-44 (6th Cir.1969)).   Established doctrine provides a framework for resolving the conflict between the policies of encouraging settlements on one hand and protecting the interests of the settling parties on the other.  It remains a strong, prevailing public policy in Pennsylvania to encourage voluntary settlements. See *Taylor v. Solberg*, 566 Pa. 150, 157-58, 778 A.2d 664, 667 (2001). The Supreme Court of the United States has recognized that "'We need not, indeed we cannot, draw a mathematical bright line between the constitutionally acceptable and the constitutionally unacceptable that would fit every case. We can say, however, that a general concern of reasonableness ... properly enters into the constitutional calculus.' " *Pacific Mutual Life Ins. Co. v. Haslip*, 499 U.S. 1, 18, 111 S.Ct. 1032 1043, 113 L.Ed.2d 1 (1991).

61.    Therefore, the Plaintiffs respectfully request this Court's declaration that the current settlement practice of the County of Philadelphia as hereinabove alleged constitutes a violation of a plaintiff's substantive and procedural due process rights under the Fourteenth Amendment of the United States Constitution.

62.    This Count seeks a declaration that the County of Philadelphia by (i) upholding the underlying Settlement Agreement despite Carrier's bad faith conduct of the settlement process (ii) while denying Hatchigian any ability to enforce the Settlement Agreement as stipulated to and (iii) failing to restore the case to the civil trial docket

18

thereafter - - has unlawfully deprived plaintiff Hatchigian of his due process rights as guaranteed him under the United States Constitution. 42 Pa. C.S. § 7532.

## COUNT III

## VIOLATION OF THE PENNSYLVANIA CONSTITUTION -

## (Defendants Philadelphia County and Philadelphia Court of Common Pleas)

63.     The allegations of Paragraphs 1-79 are incorporated herein as if re-alleged in full.

64.     Article I, §6 and §11 of the Pennsylvania Constitution recognize a right to judicial proceedings states, in pertinent part:

**§6. Trial by jury.**

*Trial by jury shall be as heretofore, and the right thereof remain inviolate. The General Assembly may provide, however, by law, that a verdict may be rendered by not less than five-sixths of the jury in any civil case.*

**§11.** *Courts to be open; suits against the Commonwealth. All courts shall be open; and every man for an injury done him in his lands, goods, person or reputation shall have remedy by due course of law, and right and justice administered without sale, denial or delay.*

65.     Defendant Carrier's settlement conduct in the state court was motivated by Plaintiff Hatchigian's attempt to exercise his constitutional rights as guaranteed him under the Constitution of the State of Pennsylvania and the United States Constitution. At the same time, the Defendant County has allowed Carrier and its settlement counsel to violate the judicially approved Settlement Agreement with impunity. Its permission was granted based on no more than Carrier's ad hoc request for release execution,

even after the release submitted deviated from the scope of the release agreed upon on Jan. 23, 2017.

66.    As Carrier and counsel intended throughout the settlement process, the memorialized release term of the Settlement Agreement was nonconforming and departed from the Jan. 23, 2017 recording, but the County and the Court failed to detect the rejected waiver language and the impropriety of the Carrier's settlement conduct was compounded when denying relief upon Hatchigian's motions, dismissing each appeal of the issue and subsequently failing to restore the action to the civil trial docket.

67.    When reviewing whether a state action unconstitutionally deprives a person of a protected interest, a substantive due process inquiry balances "the rights of the parties involved subject to the public interests sought to be protected." Johnson v. Allegheny Intermediate Unit, 59 A.3d 10,20 (Pa. Cmwlth. 2012).

68.    The County's existing, frequent practice (of failing to prevent or sanction the settlement conduct engaged in by Defendant Carrier's settlement attorney, while denying the consumers the ability to enforce or set aside the settlement, and then failing to restore litigation the civil jury trial docket once a conforming settlement release fails to materialize) has effectively exposed  Pennsylvania state court plaintiffs including David Hatchigian, to the unchecked malfeasance of corporation counsel and deprived him of due process on his legal claims.

## COUNT IV
### VIOLATIONS of 42 U.S.C. § 1983 PROSPECTIVE INJUNCTIVE RELIEF
### (Defendants Philadelphia County and Philadelphia Court of Common Pleas)

69.    The allegations of the Paragraphs 1-76 are incorporated herein as if re-alleged in full.

70.     This count is for the above violations of Plaintiff Hatchigian's civil rights actionable under 42 USC §1983 that occurred after Plaintiff brought an action in Philadelphia Country Common Pleas Court.

71.     There is a reasonable probability of irreparable future injury to the plaintiffs if Defendants are not enjoined from continuing the alleged settlement practices and procedures in the future.

72.     The plaintiffs will suffer irreparable injury unless the injunction issues.

73.     The injury to the plaintiffs outweighs whatever damage the injunction may cause defendants.

## COUNT V
## DECLARATORY JUDGMENT

74.     The allegations of the Paragraphs 1-81 are incorporated herein as if re-alleged in full.

75.     Plaintiffs were initially damaged by Defendant Carrier's breach of settlement, breaches of warranty as to the defectively designed goods, and refusal to address their mold-related damages claim despite actual notice of the recurring defect when the goods were placed on the market.

76.     Later, Carrier's bad faith settlement conduct in the state court action and the Count of Philadelphia's lack of oversight resulted in Plaintiff being denied a day in court on the claims he brought in the state court.

77.     To prevent this total denial of due process, Plaintiff seeks a judgment from the Court declaring that the parties' settlement is hereby voided and that the state court action is hereby reinstated. 42 Pa. C.S. § 7532 and declaring that by denying

21

Hatchigian's timely attempts to obtain a rehearing on the release issue or enforce/set aside the Settlement Agreement, the County of Philadelphia ultimately deprived Hatchigian of a day in court on his claims in the state court action, violating notions of 'fundamental fairness' inherent in the concept of due process as defined by the Constitution of the State of Pennsylvania and the United States Constitution.

### COUNT VI through COUNT XI

### [Incorporating by reference Counts I - V in the State Court Action (CP Case No. 150604314)

78.    The allegations of the above paragraphs are incorporated herein as if re-alleged in full.

79.    In addition, Plaintiffs incorporate by reference Counts I through V of the Complaint originally filed by Plaintiff Hatchigian in the state court action [See Complaint, Common Pleas #150604314, filed Sept. 20, 2015)]   These counts are re-alleged as if restated verbatim herein as Counts VI-XI of this Amended Complaint.

80.    Upon further information and belief, Defendant Carrier has placed funds in reserve to deal with future losses arising from similar consumer claims stemming from the "repair and replace" procedures alleged in Counts VI through XI. Regardless of the reservation of such funds, Carrier may not rely on product warranty terms purporting to exclude all liability for undisclosed out of pocket fees for replacement labor as well as for purchaser's mold remediation charges and mold-related diagnostic laboratory testing, none of which are consequential or "incidental" to Plaintiff's original purchase and/or normal product use under state warranty law. Plaintiffs are entitled to recover

their statutory costs and reasonable and necessary attorneys' fees in the state court action including those incurred as a result of trial and/or prosecuting or defending an appeal up to the Supreme Court, and all costs of court.

## JURY DEMAND

The Plaintiffs demand a trial by jury on all issues.

## ATTORNEYS' FEES AND COSTS

The Plaintiffs demand reasonable attorney's fee and costs of suit. [2]

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs respectfully request judgment against Defendants, as follows:

A) Declaring that the Jan 23, 2017 Settlement Agreement is unconstitutional and therefore void, that enforcement of its terms is enjoined. 42 Pa. C.S. § 7532, and that CP Case No.150604314 is hereby reinstated and remanded for a trial on the merits in the Philadelphia Court of Common Pleas;

B) Restraining Defendant Carrier Corporation from continuing to market, sell or distribute the subject mold-inducing roof top unit;

C) Declaring pursuant to 42 Pa. C.S. § 7532 that Defendant Carrier Corporation and the County of Philadelphia have unlawfully deprived David Hatchigian of procedural and substantive due process guaranteed him under the United States Constitution and Article I of the Pennsylvania Constitution;

D) Awarding exemplary damages for willful acts deemed to have been performed with malice, and/or gross negligence, in the amount of Fifty Thousand Dollars ($50,000.00) and actual damages suffered by the Plaintiffs due to the conduct hereinabove described, for the Sum Certain of Thirty Thousand Dollars ($30,000.00), together with prejudgment interest thereon;

E) Awarding Plaintiffs' costs, expenses and attorneys' fees; and

F) Granting such other and further relief as this Court may deem appropriate.

G) For Sum Certain of Seventy Five Thousand Dollars ($75k)

**Dated: December 18, 2020**

---

[2] See *U.S. Claims, Inc. v. Dougherty*, 914 A.2d 874 (Pa. Super. Ct., 2006) (concluding plaintiff was entitled to attorney's fees, costs and damages for delay under Pa.R.A.P. 2744 although proceeding pro se.); *Pickholtz v. Rainbow Technologies, Inc*., 284 F.3d 1365, 62 USPQ2d 1340 (Fed. Cir. 2002) (awarding the pro se equivalent of attorney's fees where counsel's conduct in the underlying state court action was vexatious and unreasonable)

Respectfully submitted,

*David Hatchigian*

_____

**DAVID HATCHIGIAN,**
**PLAINTIFF PRO SE**

*Joan Randazzo*

_____

**JOAN RANDAZZO,**
**PLAINTIFF PRO SE**


**December 18, 2020**

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing instrument has been served upon the Attorney of Record of all parties to the above captioned case in accordance with Pennsylvania Rules of Civil Procedure on this 20 day of December, 2020 by the following:

Via U.S.P.S 3817:

MARSHALL, DENNEHEY, WARNER, COLMAN GOGGIN

CAROLYN M. SCHWEIZER, ESQUIRE

2000 Market Street,

Philadelphia Pa. 19103

215-575-4569 fax 215-575-0856

cmschweizer@mdwcg.com

JAMES F. RYAN ESQUIRE

SCHWABENLAND & RYAN, P.C.

995 Old Eagle School Road

Suite 306

Wayne Pa. 19087

jfryan@jfryanlaw.com

CITY OF PHILADELPHIA LAW DEPARTMENT

CLAIMS COORDINATOR, CLAIMS UNIT

ONE PARKWAY BUILDING,

1515 ARCH STREET,

14TH FLOOR,

PHILADELPHIA PA. 19102-1595

215-683-5410

25